**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

S. Sharpe Sulaymu-Bey, *en propria persona*
Aleshia M. Sulaymu-Bey, *en propia persona*

               **PLAINTIFFS**

against

CITY OF NEW YORK; GLADYS CARRION, individually and in
her capacity as COMMISSIONER OF ACS/ NYCCS,
SASHA DAWSON, individually and in her
capacity as employee OF ACS/ NYCCS, KATHY ANN BEST
individually and in her capacity as employee OF ACS/ NYCCS,
LINDA CATO  individually and in her
capacity as employee OF ACS/ NYCCS,
NIKIA WILLIAMS,  individually and in her
capacity as employee OF ACS/ NYCCS,
Michaelangelo MEDINA; Detective David SMALL;
Officer Terry RILEY
Seargeant CHARLES PIEFER individually and in their,
capacities as employees OF NEW YORK CITY POLICE DEPT.
LUCIANA MICHELE, individually and as physician,
KINGS COUNTY HOSPITAL, HEALTH AND HOSPITALS
CORPORATION

               **DEFENDANTS**

: AMENDED
: FEDERAL COMPLAINT SOUNDING IN
: PETITION FOR REDRESS OF GRIEVANCES
: relate back pursuant to F.R.C.P. 15
:*nunc pro tunc*
:
:CASE NO: 17-CV-3563 ̶ AnD ̶ SJB
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:



JURY TRIAL DEMANDED

---

1.        This case involves a claim that Defendant CITY OF NEW YORK by and through it's agency

ADMINISTRATION FOR CHILDRENS SERVICES/ NEW YORK CITY CHIDRENS SERVICES, has  several

policies and practices, outlined below, of forcefully abducting children, sons and daughters without warrantrt-

order, although municipal agency ACS had notice and knew that it was effecting "removals" not meeting

Constitutional muster, or in the alternative, that their employees consistently faced situations that placed

employees in positions implicating same deficient procedures, and acting with willful indifference to its

responsibility to properly train its employees. Defendant City of New York operated according several policies

and practices that cause irreparable harm to plaintiffs as outlined in this complaint, and    injunctive relief is

requested.

## GENERAL ALLEGATIONS

2.    This action arises under the United States Constitution, under the First, Fourth, Fifth, Ninth, Thirteenth Amendments, and Substantive Due Process Rights Secured by the Constitution for the United States of America, and under Federal Law, particularly: Article Six cl. 2 U.S.C.A; 22 U.S.C. 7701 et. seq., 22 U.S.C. 141 et. seq.; 8 stat. 100- 105 and 484-487; Civil Rights Bill of 1866 14 STAT. 27 CH. 31 and 42 U.S.C.A § 1983; 18 U.S.C. 1595 Peonage, Victims of Trafficking Victims Protection Act; 18 U.S.C. 1091 and 42 U.S.C. 2000 (bb) Religious Freedom Restoration Act; Religious Land Use Protection Act; Ex Parte Young 209 U.S. 123 at 177 "Upon the state courts equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the state courts are required to take an oath to support that constitution, and they are bound by it, and the laws of the United States made in pursuance thereof, and all treaties made under their authority, as the supreme law of the land, 'anything in the Constitution or laws of any state to the contrary notwithstanding.' If they fail therein and deny or withhold or deny the rights, privileges, or immunities secured by the Constitution and laws of the United states, the party aggrieved may bring the case from the highest court in the state... to this court..." *quoting Robb v Connelly*, 11 U.S. 624, 111 U.S. 637;

3.    Jurisdiction is conferred on the court by 28 U.S.C. 1343 (3) (4) and 28 U.S.C.A 1331 which provide original jurisdiction in the courts of all suits brought pursuant to Constitution and laws of the United states. The court has jurisdiction over plaintiffs' state law claims and over certain defendants pursuant to 28 U.S.C.A. 1367. Ex Parte Young, 209 U.S. 176, which states, "Too little consequence has been attached to the fact that the courts of the states are under an obligation equally strong with that resting upon the Courts of the Union to respect and enforce the provisions of the Federal Constitution. If they fail to do so the party complaining has a clear remedy for the protection of his rights, for he can come by writ of error ... to this tribunal for redress in respect of every

right granted or secured by that instrument and denied by the state court." Ex Parte Young, 209 U.S. 176.

4.      Pursuant to Religious Freedom Restoration Act 42 U.S.C. 2000 (bb) – Congressional Findings and Declaration of Purpose, states: (a) Findings The Congress finds that -

> 1.  The framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the first Amendment to the Constitution;
>
> 2.  Laws neutral toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise;
>
> 3. Governments should not substantially burden religious exercise without compelling justification;
>
> 4. In Employment Division v. Smith, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify its burdens on religious exercise imposed by laws neutral toward religion; and
>
> 5. The compelling interest test as set forth in prior federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interest

(b) purposes of this chapter are -

> 1. to restore the compelling interest test as set forth by Sherebert v. Vernier, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and
>
> 2. to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

5.      Plaintiffs' nationality is Moorish-American, descendants of Moroccans and born in America, who were the ancient Moabites and Canaanites; Plaintiff's race is Asiatic.

6.      A main tenet of Plaintiffs' religion is, *inter alia*, to raise their children in said religion, and sons and daughters are to obey father and mother, be industrious, and become a part of uplifting fallen humanity.

7.      Plaintiff's religious right to having daughter obey father and mother, become a part of all uplifting acts The history of the right in the history of western civilization among Europeans and Moors is duly noted in history, and the contours of the right well known and the deference provided to such is well understood, as shown below.

8.      Prophet Muhammad The United States Supreme Court Honors Muhammad The Prophet of Islam... as a source of law and justice alongside Moses, Solomon, and Confucius. He is depicted in the Courtroom Frieze among the great law-givers of mankind. Muhammad (c. 570 – 632). He is depicted holding the Qu'ran. The Qur'an provides the primary source of Islamic Law. Prophet Muhammad's teachings explain and implement Qur'anic principles. The figure above is a well-intentioned attempt by the sculptor, Adolph Weinman, to honor Muhammad, and it bears no resemblance to Muhammad... in the year that the frieze of Prophet Muhammad was erected, Franklin Roosevelt was president, and Charles Evans Hughes was the Chief Justice... Following a period of fighting lasting around a hundred years before 620 A.D. Religious freedom for <u>Muslims</u>, <u>Jews</u>, and <u>pagans</u> was declared by <u>Muhammad in the Constitution of Medina</u> (built in 1935 United States Supreme Court Building, it is situated in Washington D.C. At 1 First Street NE on south wall it depicts Prophet holding the Holy Quran. SEE  ISLAMGREATRELIGION.WORDPRESS.COM/2012/09/25/PROPHET-MUHAMMAD-PBUH-LISTED-AS-GREATEST-LAW-GIVER-OF-THE-WORLD-IN-US-SUPREME-COURT)

9.      Three of the original states of fledgling Union States Society, New York, New Jersey, and Maryland adopted the English Common-law by constitutional provision, NY Constitution (1777) Art. XXXV (common law of England, statutes of England, Acts of Colonial Legislatures as of April 19 1775). NJ Constitution (1776)

10.     On information and belief, the New York Legislature has provided for religious recognition of families brought under Social services law "child shall be committed... in an institution or agency governed by persons of the same religious persuasion as the child."

11.     "Gondemar governed King James, and royal influence was not known in the courts of justice. Motives had their weight, and it was not as well settled then as it is now is, that the Moors were to be treated on a footing with other nations." See Wood. 425 MOXON et.al v. The FANNY Case no. 9895 District Court, D. Pennsylvania

1793 U.S. Dist. LEXIS 1; 17 F.Cas. 942; 2 Pet. Adm. 309 (1793). The case one similar can be found in James

Hagey's 93 Muslim Slaves, abducted Moors, African Jews, Misnamed Turks from Carologue a publication of the

South Carolina Historical Society.

12.      Treaty of Peace and Commerce between Great Britain and Morocco-signed at Fez, 23rd January 1721

Article Excerpt: IX If any quarrel or dispute shall happen between any Englishmen and a Musselman, by which

hurt by either may ensue, the same to be heard before and determined by the Emperor only; and if an

Englishmen who may be the aggressor shall make his escape, no other Englishmen shall suffer on his account;

and if two English shall quarrel to be determined by the English Consul, who shall do with them as he pleases;

and if any quarrel or dispute shall happen between two Musselman in England, or in any of the English

dominions, by which hurt may ensue, the same to be heard before one Christian and one Musselman, and to be

determined according to the laws of Great Britain.

13.      Treaty Of Peace and Commerce Between Great Britain and Morocco 28th of July, 1760 part of the

common Law of England: Article VII. It is moreover agreed , that his majesty of Great Britain shall have the

Liberty to establish Consuls or as many Consuls as he pleases; in the dominions of the Emperor of Fez and

Morocco, and that the said Consul or Consuls may reside in any port or ports, or places they please, as well

maritime as others, belonging to or under the jurisdiction of the Emperor of Fez and Morocco; and that the said

Consul or Consuls shall be treated with the respect due to their titles or characters; and they, as well as other

subjects of his Majesty residing there, shall enjoy the entire freedom and exercise of their religion, without the

least impediment, affront, or reproach either by word or action.

14.      Article IV – English subjects or merchants residing in the dominions of the Emperor of Morocco, shall,

themselves and their property, be in perfect security : they may follow their religion unmolested; they may also

at liberty to send any of their agents, either by land or sea, for the purpose of their service, without hindered or

stopped he may go on board himself or any of his people without being liable to pay anything whatever.

15.      Treaty of Tripoli 1796 ART. XI : As the government of the United States of America is not in any sense

founded on the Christian-religion, - as it has no character of enmity against the laws, religion or tranquility of

Musselmen, - and as the said states never have entered into any war or act of hostility against any Mehomitan

nation, it is declared by the parties that no pretext arising from religious opinions shall ever produce an interruption of the harmony existing between the two countries.

16.     The Journal of the Senate Foreign Relations committee Mr. Simpson to Secretary of State Rhabat, 18 August 1785: Sir, I have at last the happiness to acquaint you and request that you will be pleased to inform His Excellency the President, that this morning, by appointment, I attended His Imperial majesty Muley Soliman, at Meshooar, when he was pleased to say to me in public, nearly as follows: The Americans, I find, are the Christian Nation my father who is in glory, most esteemed. I am the same with them as my father was; and I trust they will be so with me. I have given orders to Sid Ben Ottman to write my answer to their letter, which will be given to you, and to tell them that I am upon the same footing with them as my father was.

17.     11 June 1985 131 Congressional Record E2661-02 Congressional Record 99th Congress, First Session, a summary of the remarks of Mr. Johanna O'Hara: "Mr. Chair, Honorable Members of the Committee of Foreign Affairs, my colleagues and I, arriving straight from the Moroccan Parliament, bring you the greetings of Morocco and hope that these direct contacts between our two countries will contribute to widening the understanding between our two countries and strengthening the friendship which binds Morocco and the United States of America. These ties woven from the heart and the mind, during the last two hundred (200) years remain unchangeable."

18.     Plaintiffs have preserved the nationality and Divine Creed of their ancestors, treaty signatories.

19.     The right of Moorish-Americans to exercise the fullest right to religious independence has been explicitly recognized by several legislative bodies of the several states of the United States of America.

20.     General Assembly of Pennsylvania, House of Representatives, Resolution No. 75, April 17, 1933 attached as EXHIBIT states in part: Many sons and daughters of that proud and handsome race that inspired the architecture of Northern Africa and carried into Spain its artistic temperaments have become citizens of this nation. In the City of Philadelphia there exists a Moorish-American Society made up of Moors who have found here the end of their quest for a home and of the children of those who journeyed here from the desert plains of Morocco.

21.     The resolution adopted by the City Council of Philadelphia, on 12 September 1991, Resolution no. 1202 states: The Moorish-American Society of Philadelphia is a thriving vital community made up of Moors who

have sought a better life and brighter future for their children as they journeyed here from the desert plains of Morocco.

22.     Resolution 1202 further goes on to recognize Constitutional guarantees of Religious Independence for Moors to " carry on those traditions so vital to the definition of their presence as a people by use of the name suffixes El or Ali or Bey and that this recognition is accompanied by the highest respect for the Moorish People and their culture".

23.     The Right to carry on those traditions so vital by seeking a better life and brighter future for our children and presence as a people is preserved by Charter of Religious Body Politic, on or before 20 July 1928, pertaining to sons and daughters of that race see Exhibit B, Holy Koran for Moorish Science Temple of America, and the Divine Constitution Act 7. [Exhibit A]

24.     Plaintiff asserts as a Federal Right under U.S.C.A. Article 4 cl. 2: Full faith and credit shall be given in each state to the Public acts, records, and judicial proceedings of every other state and the Congress may by general law, prescribe the manner in which such acts records and proceedings shall be proved and the acts The preceding paragraphs provide some historical support for the Right to Free Exercise of Religion, and -in relation to Plaintiffs- is part of Due Process.

25.     Plaintiffs have demonstrated that Moorish-Americans are classed as separate and distinct people

26.     Defendants erroneously classified Plaintiff family's race as Latino/African American.

27.     On or before 24 April 2014, Plaintiffs possessed the rights guaranteed by the United States Constitution, including but not limited to the Fourth Amendment and Substantive and Procedural Due Process Rights against unlawful and unreasonable search, seizure, and excessive force and Right to Familial Integrity and the Right to be free from unlawful detention and/or arrest by police officers acting under the color of law.

28.     On or before 24 April 2014, Plaintiffs possess the right to be and remain a family unit free from State intrusion. Defendant City was given actual Notice of said right via correspondence, on October 11 2013/14, received at ACS and governor's Office.

29.     The use of ex parte proceedings subsequent to taking of daughters proximate cause of substantial separation of Plaintiff's Family. (SEE Governors Memoranda Exhibit B)

30.     Defendants and each of them were at all times mentioned in this complaint acting under color of state

law.

31.     Upon Information and belief, at the time of April 24 2014, defendant Dr. Michel was under contract with

defendant Health and Hospitals Corporation to examine and treat children who were patients at that Hospital,

prior to working with behavioral health department in KINGS COUNTY HOSPITAL.

COMMON ALLEGATIONS

32.     On 24 April 2014, Aleshia M. Sulaymu-Bey, Plaintiff, peacefully and lawfully brought plaintiffs 4

daughters in to Kings County Hospital pediatric division (KCH) to have them receive medical check-ups.

33.     Plaintiff's Aleshia Sulaymu-Bey also a follow-up appointment pertaining to a fall in a grocery store

suffered by plaintiffs oldest daughter a couple of weeks prior. Although Adult Plaintiff Aleshia M. Sulaymu-Bey

had brought minor Plaintif N. A. S.B. to be examined directly after minor experienced the fall by a colleague of

her childrens' primary care doctor, mother brought daughter to KINGS COUNTY HOSPITAL for follow-up

appointment.

34.     On said date, several doctors were examining  plaintiffs daughters, giving them all good diagnoses of

health.

35.     On 24 April 2014, Dr. Kim also examined Baby daughter Nadjmaah, and took examination of baby After

speaking with plaintiff Mother and taking a history from Plaintiff, and otherwise conducted himself in a pleasant

manner towards plaintiff.

36.     On 24 April 2014, Dr. Kisung Kim informed plaintiff that her baby daughter was Healthy, fine in all

respects, and entered his findings into medical record maintained in KCH, that baby daughter was healthy,

developed and nourished. (SEE Attached to complaint as exhibit A.)

37.     Moments thereafter, Dr. Michel, another physician employed at KCH, entered the examination room, but

did not examine the baby. Instead, after sitting down briefly behind a desk and after taking a look at plaintiff,

Defendant began yelling at plaintiff and pointing a finger of derision at her, causing Plaintiff to feel threatened

and humiliated.

38.     Defendant Dr. Michel began questioning Plaintiff name and or title; during the course of the

conversation, Defendant Dr. Michel asked Plaintiff Mother about her administration of prescription drugs to treat

minor Plaintiff N. A. S. B., to which Plaintiff Mother replied that her national and religious belief compelled her

to use "alternative medicine" or the use of herbs; Defendant Dr. became agitated and yelled at Plaintiff Mother.

39.    Defendant Dr. Michel recognized the general health and well-being of Minor Plaintiffs, by stating "I see your children are healthy", to which plaintiff responded, "Yes my children have not been sick".

40.    Dr. informed the Plaintiff A. Sulaymu-Bey that she would set an appointment for her return in six week follow-up appointment, and Plaintiff mother indicated she would return and also wanted a second opinion in regards to Defendant Doctor Michel purported concerns. Defendant Dr. Michel did not prescribe any supplementation or prescription for Plaintiff N. S.B., despite the fact that Dr. Michel expressed that she believed that N.S. B. should weigh more than her current weight.

41.    On information and belief, Dr. Michel coerced Dr. Kisung Kim, who initially gave infant plaintiff a diagnosis of good health, and nutrition, to alter Dr. Kim's findings in order to further Dr. Michel's personal agenda in derogation of her professional duty toward plaintiffs.

42.    ACS/NYCCS had no legal basis to use Dr. Michel claim as a basis to seize daughters without judicial process, where Dr. Michel express actions allowed for a six-week return date.

43.    ACS/NYCCS employees abrogated clearly established rights of which an objectively reasonable official would have known where a medical professional who allowed daughters to leave hospital with a six-week return appointment after speaking with doctor, who were presented with documentation of daughter being healthy, nourished and developed at the time of the seizure, and the assertion of rights to family and right to be free from unreasonable search and seizure and forced entry.

44.    A employee ACS could not reasonably believe if thinking objective that emergency circumstances were present when ACS employees chose not to obtain court-order when employees were presented with evidence, including documentary evidence.

45.    Defendant Dr. Michel called Mother and informed her that a social worker was present. Social worker (Jane Doe) took a look at Plaintiff and her daughters, and asked Plaintiff a few questions, spoke briefly, and generally conducting herself in a cordial manner towards Plaintiff Mother. Social worker(JANE DOE) then left the room after giving her card to Mother. On 24 April 2014, Dr. Kim informed plaintiff that her baby daughter was Healthy, fine in all respects, and entered his findings into medical record maintained in KCH, that baby daughter was healthy, developed and nourished. (SEE Medical record Attached to complaint as Exhibit C.)

46.     Defendant Dr. Michel after yelling at plaintiff purported to discover that Plaintiffs oldest daughter had a

heart murmur, which was false and made in furtherance of Doctor's own agenda.

47.     In making her perfunctory medical exam and opinion, Dr. Michel failed to follow accepted medical

standards in making her opinion in furtherance of Dr.'s own personal agenda and with deliberate indifference for

the truth.

48.     On information and belief, subsequent to Mother and daughter Plaintiffs release from KCH and meeting

with social services worker, Defendant Dr. Michel thereafter called the Maltreatment Register, making a second

report in furtherance of defendants personal interests; although defendant was aware and has admitted that

Defendant did not examine baby,  that Dr.head circumference and BMI evaluation must also be done in order to

conform with World Health Organization charts purported to be used by Dr. Michel. standards of medical

community Dr. Michels statements of

49.     Plaintiffs aver that acts and omissions in purporting to use of World Health Organization Growth Charts

by Defendant Dr. Michel as basis is not sufficient to mount the constitutional bar of Fourth Amendment and Due

Process rights. never informed Plaintiff Mother of her opinion that Plaintiff daughter with "Failure to Thrive", in

furtherance of Defendant Dr. Michel's own personal agenda and interests.

50.     On information and belief, defendant Dr. Michel was acting at all relevant times under color of state law.

51.     Defendant Dr. Michel actions of  purporting to use WHO growth charts are merely a case  of opinions

varying among medical professionals (SEE www.ncbi.nlm.nih.gov/pmc/articles/PMC3902406/.) and does not

per se form a sufficient basis to violate plaintiffs rights secured by the Fourth Amendment, Due Process, and

rights derived from 8 stat. 100- 104, where a physician Dr. Kim Kisung prima facie stated that "based on his

knowledge, observation and training" N.S.B. was hydrated, active , and nourished."

52.     Plaintiff mother Aleshia is a Moorish-American of copper olive skin tone, who regularly dresses in her

cultural attire and national head-dress; plaintiff Aleshia M. Sulaymu-Bey, according to her divine creed and

obligations under body politic, has, at all times, nourish and exercise Due Care for her daughters and family

providing meals cooked from scratch as  evidenced by Plaintiffs care of all four of daughters in likewise manner.

(SEE Divine Constitution Act 7)

53.     On 25 April 2014, Plaintiffs were peaceably in their private home, when Defendant City showed up with

Nakia Williams Defendant and Linda Cato Defendant 2, and Kathy-Ann Best as well as four N.Y.P.D. agents consisting of one Seargant "Peifer", badge number 732 and DOES 2-4 and two employees of ACS. Plaintiffs became suspicious about the intentions of the ACS employees being with armed police. Plaintiffs questioned agents through the door to ascertain the nature of their business there. Upon finding out the purported reason for their presence there, plaintiffs assured agents that daughter was just seen by doctors the day prior, and that doctors stated that N.S.B. was "developed, hydrated, active and nourished". Plaintiff A.M. Sulaymu-Bey stated that she was going to provide them documentation showing that defendant Dr. Michel doctor gave her an appointment to return a full six weeks out. Plaintiff located the document and slid it through the door in order to assist the agents in their investigation and give the proper understanding of circumstances.

54.    Plaintiff asserted her constitutional rights when Agents demanded to open door.

55.    Defendant caseworkers BEST, CATO, WILLIANS and DAWSON, and Police DOES 1-4, willfully and/or recklessly disregarded Plaintiff Mother Sulaymu- Bey's assertion of Plaintiff's Constitutional Right to be Free from Unreasonable Search and Seizure.

56.    Plaintiff Mother questioned employees as to the amount of police at Plaintiff's home, a cop stated "we are going to take your children". Another Cop stated in response to the assertion by Plaintiff of her constitutional rights, "so sue us". When asked by Mother to produce a warrant to enter the home, officer john Doe 1 stated "we don't need one"

57.    Agents continued to demand that plaintiffs open door, when at that point, Plaintiff's S. Sulaymu-Bey, noticed the door lock turning, and Police seargent John Doe forced the door open entering home. Petitioner mother assured Agents and employees that Plaintiff Aleshia Bey planned to return for follow-up appointment. Defendant Srgnt Doe 1 Pfiefer badge no. 732 spoke to an ACS agent on a cell phone. Defendant Srgnt Doe 1 Pfiefer badge no. 732  and several other members of 79th precinct forcibly seized daughters from mothers arms by applying pressure to the head and neck of Aleshia Mcmillen Sulaymu-Bey.

58.    The force applied to Plaintiff Mother Sulaymu-Bey' head and neck caused physical injury

59.    The force applied to Plaintiff Mother Sulaymu-Bey' head and neck caused severe physical and emotional distress.

60.    Plaintiff's were denied a hearing or an opportunity to be heard on the matter of having daughters forcibly

seized.

61.     On 25 April 2014 Plaintiffs were not given a date for a judicial hearing in relation to the seizure of

daughters.

62.     Plaintiff S. Sulaymu-Bey discovered contact information for ACS supervisor Sasha DAWSON

63.     Plaintiff S. Sulaymu-Bey contacted ACS/NYCCS Supervisor Sasha Dawson and demanded to see a

magistrate, and Defendants Sasha Dawson informed Plaintiffs that there would be a hearing on the following

Monday on or about 28 April 2014.  Plaintiffs S. Sulaymu-Bey spoke with ACS supervision SASHA DAWSON

who stated that there was a mistake and that there was no hearing on said date, that it would be on or about 29

April 2014.

64.     As a part of Defendants scheme and custom, On or about 25 April 2014, a pro forma ex-parte hearing

was held that foreclosed plaintiffs' ability to regain care of daughters without Family Court Order. During said

hearing no It is also Agency policy to make false, and misleading misrepresentations to Family Court, or

otherwise intentionally manipulate the process where, among other things, ACS/ NYCCS arbitrarily abuses its

authority by omitting exculpatory evidence to control outcomes in proceedings.


65.     Plaintiffs first opportunity to be heard on the issue of seizure of Plaintiff's daughters Plaintiffs N. A. S.

B., M.S.S.B.,  A.S.S.B. and N. S. B. was on or about 30 April 2014.

66.     Defendants breach of this duty caused severe emotional and psychological distress and

encroachment on substantive and procedural Due Process rights.

67.     There is no prior judgment or lawful authority issued from Family Court as to Plaintiffs prior to 24 April

2014.

68.     Defendant City's policy that directs the seizure of all daughters or children in the home, including those

who have no claim regarding said children, recklessly disregards fundamental notions of fairness where

Defendant City's policy and/or practice utterly failed to, and does not allow, Plaintiffs, who have raised older

daughters without health concerns or other serious issues, to rebut agency decision by that fact or other

documentary evidence prior to social workers and/or police acting on policy.

69.     Defendants City Commissioner of ACS/NYCCS knew of a moral certainty that their social workers and

police consistently faced situations that risked violation of families' right to remain together, yet failed to correct or lessen the risk.

70.    Defendants City failed to train its employees regarding the existing rights secured by Fourth Amendment and Due Process.

71.    Defendants caseworker and police had no legal basis to seize minor Plaintiff's.

72.    Defendant Doctor Michel delegated her duty to provide proper medical treatment to daughter, including making a prescription or providing supplementation.

73.    On information and belief, defendants CITY OF NEW YORK and Gladys Carrion through ACS/NYCCS knew of a moral certainty that the risk of erroneous deprivation of protected liberty, like property interest, in an ex-parte proceeding, is extremely high.

74.    Defendant Dr. also by various acts and omissions, was the proximate cause of extreme mental and emotional distress, anguish etc. to minor and Adult Plaintiffs

75.    In undertaking to examine minor Plaintiff after Dr. Kim told Plaintiff mother that her daughters were healthy, active and nourished, Defendant Dr. Michel undertook the professional duty towards N.S.B., and N.A.S.B.

76.    Defendant Dr. Michel also failed to follow procedural safeguards and official policy of KCH developed for "failure to thrive" diagnosis, in deliberate indifference to the veracity of her (Dr.) claims in furtherance of Dr.'s own personal agenda and motives.

77.    Defendants KINGS COUNTY HOSPITAL has a policy and practice of tacitly approving Dr. actions undertaken not in conformity with established medical standards and official policy.

78.    The acts alleged in this complaint to have been done by defendants, were done by them not as individuals but under color of the authority of state law.

79.    To the extent that ACS employees substituted their medical judgment for the express actions of doctor, as a basis to make a finding to take daughters from Plaintiff Mother care infringed on Constitutionally secured rights (Substantive Due process).

80.    Orders entered by FAMILY COURT judge as to plaintiff Aleshia M. Sulaymu-Bey are not final determinations.

81.    Plaintiff S. Sharpe Sulaymu-Bey was not a party to the original action nor were plaintiff's interests represented in said action.

## ALLEGATIONS MEDICAL DEFENDANTS

82.    The state of New York has established a statutory scheme for handling child abuse investigation and Register maintains telephone hotline with a toll-free number. State regulations and statutes set forth the responsibilities of each participant.

83.    The NYSOCFS operates centralized system for the collection and storage of information of allegedly abusive and neglectful parents called the NYS Child Abuse Register, maltreated child register.

84.    Anyone may call the toll-free number to make a report, certain professionals, including physicians, are legally required to report to the register whenever they have reasonable cause to suspect that a child coming before them in their professional capacity is an abused child.

85.    Local child protective service is responsible for investigating complaints of suspected child abuse, neglect, etc.

86.    Defendant Dr. also employed unlawful presumptions in lieu of performing her cognizable legal duty to plaintiff Aleshia and child plaintiffs. thereby causing injury to all plaintiffs in furtherance of her own personal interests. and/or in furtherance of a conspiracy. call to maltreatment register is the proximate cause of seizure of infant plaintiff, because if Dr. did not make this diagnosis, infant plaintiff and siblings would not have been separated from family.

87.    Dr. Michel delegation of her cognizable legal duty of care to infant plaintiffs, was shirked by not providing treatment plan or possibly a referral to a nutritionist or the benefit of hospital policies related to such diagnosis.

88.    Defendant Dr.'s use of maltreatment register in lieu of performing legal duty was done with deliberate indifference for the truth of opinion, where doctor omitted pertinent facts that tend to disprove Plaintiffs daughter was "abused" or "maltreated".

89.     All acts were done within the scope of Dr. Michel's employment at KCH at all times relevant.

90.     Defendants KINGS COUNTY HOSPITAL has a policy and practice of tacitly approving it's employees actions undertaken not in conformity with established medical standards and official policy of hospitals generally as to interaction with parents regarding F.T.T. diagnosis.

91.     Plaintiff caused all conditions precedent to suit to be fulfilled. Months have passed and Defendants have failed to respond or settle claim. (SEE NOTICE OF CLAIM attached as EXHIBIT and AFFIDAVIT IN SUPPORT.)

92.     On 25 April 2014, Defendant city Police Officers spoke with Defendant Sasha Dawson on a cellular phone in furtherance of a conspiracy.

93.     On information and belief, Defendant agency has set out to abrogate Plaintiffs' birthright based on nationality, and religious creed, and discriminates against Moorish-Americans on the basis of national origin.

94.     Defendants took daughters not in furtherance of an investigation or any proof of neglect or abuse but based, inter alia, on a presumption that Plaintiff would not act reasonably.

95.     Defendant City did not obtain any order or judgment against plaintiffs prior to 24 April 2014.

## FAMILY COURT ACT ARTICLE TEN AND SOCIAL SERVICES LAW SECTION 422 UNCONSTITUTIONAL AS APPLIED TO PLAINTIFFS:

96.     Defendant City maintains a widespread practice, or enables a custom of 'Institutions and Practices Similar to Slavery', comprised of several policies and practices that allow employees of said City to ignore the asserted rights of Plaintiffs

97.     The right to be free from unreasonable search and seizure and substantive right to family integrity and right of plaintiffs under the Ninth Amendment to the Constitution for United States Of America to exercise constitutional guarantees of religious independence to enable citizens of Moorish Descent to carry on those traditions so vital to the definition of our (plaintiffs') presence as a people.

98.     Moreover plaintiffs sent out interrogatories that required a response from Defendants, giving notice of said rights and freedoms and created a constitutional duty on the part of official policymakers or their agents. On information and belief, Defendant is confident, as evidenced by its municipal employees of the 79th Precinct

statement "so sue us!", and other statements and acts of ACS/NYCCS employees as outlined in this Complaint, that its slaveholder status will proceed unchecked as it has developed a scheme that affords it's agents enough latitude to navigate around the "bar" of rights secured by the Constitution.

99.    Defendants use various departments within defendant City's employ to delegate authority that municipal agency does not have: a means to designate circumstances as emergency or exigent, in violation of the Fourth Amendment to Constitution for United States of America; Defendant CITY, Nakia Williams Defendant and Linda Cato Defendant 2, and Kathy-Ann Best substitutes the due diligence required to determine probable cause in relation to rights of Plaintiffs with, among other things, boilerplate forms filled out ex post facto of the seizure of minor plaintiffs

100.    The powers exercised by CITY through ACS are not powers granted but constitutionally void acts where the interest of the agency must comport with the purpose of statute that would otherwise empower them to act; in forcefully seizing plaintiffs daughters in the manner described in this complaint, all Defendants have caused plaintiffs daughters to be maltreated; defendants CHARLES PIEFER, Detective David Small, Police agents Terry Riley, and Michaelangelo Medina, Gladys Carrion, Nakia Williams and Linda Cato, and Kathy-Ann Best and CITY OF NEW YORK, have Acted beyond and outside the scope of delegated authority and did not receive a grant of authority to take said actions.

101.    The hearing applied retroactively to Moorish-Americans by Judge Robert Mulroy F.C.J. on 25 April 2014 that purported to uphold the removal is rendered pro-forma-where the deference accorded the agency constitutes a rubber stamp to violation of plaintiffs' rights as enumerated. The hearing consisted of ROBERT MULROY, F.C.J listening to unsworn testimony of Corporation Counsel Bradley Smith reciting hearsay that consists in the main of misrepresented claims of "dealing with the family", without even one inquiry relating to the health or condition of plaintiffs daughters whom plaintiffs have loved, cared and sacrificed for and guided right. The rubber stamped order, consistent with Institutions and Practices Similar to Slavery, contains false information.

102.    Fam. Ct. Act section 1011and New York State Child Protection Acts state as their purpose to prevent Maltreatment; The scope of the statutes invariably require Due Diligence and Inquiry into whether plaintiffs

daughter was maltreated including intentional mistreatment sufficient to give rise to cause to separate daughters from plaintiffs

103.   The use of ex parte proceedings based on claims of the nature outlined in this Complaint, utilized subsequent to the forcible seizure of daughters in circumvention of the principles and rights embodied in, *inter alia*, the Fourth Amendment,  8 stat. 100-104 and 434-437. Article 6 cl. 2, rights vested in plaintiffs, constitutes slave related practices made unlawful by international agreements in force and domestic law.

104.   Defendants scheme of using pro-forma ex-parte hearing in the context of seizing daughters without any judicial authorization, defendants, and each of them, ensured that plaintiffs could not be heard on the matter to offer facts or rebut the myriad of unconstitutional presumptions employed by agency (ACS) and statute Fam. Ct. Act Art. 10; the scheme of the statute does not provide for review of Agency tactics regarding the circumstances surrounding the seizure of plaintiffs daughters, nor is it considered in the final disposition of court, and this practice encourages the rubber-stamping of remand orders.

105.   Family Court Act 1028 hearing, (the fastest remedy offered by Fam. Ct. Act art. 10 for the return of children) has two major defects that render statute unconstitutional as applied: Fam. Ct. Act 1028 (b) has a provision that states "the court shall consider and determine in its order whether continuation in the child's home would be contrary to the best interest of the child."

106.   This meaning contemplates continued placement if the child is in protective custody pursuant to court-order.

107.   Plaintiffs were damaged by the proceeding that was held in secret, Defendants Gladys Carrion, Kathy-Ann Best, and City of New York,  having full knowledge that in any Fam. Ct. Act 1028 proceeding there is a required consideration of a finding that continuation in the child's home would be contrary to the best interests of child and defendants Gladys Carrion was aware that the fruits of the conspiracy to deprive rights of plaintiffs would be that the constitutionally void as the resulting "remand" order issued as against plaintiff Aleshia M. Bey dated 25 April 2014 contained such a clause

108.   This action operates as an abrogation of Substantive and procedural Due Process of family integrity and Right to Privacy, where the Fam. Ct. Act 1028 goes on to delineate that if there is a substantial probability that the child will be found to be abused or neglected and that the final order of disposition will be an order of

placement... this clause allows officials to possibly chart a course for particular defendants before they even appear in an Article 10 proceeding.

109.     Defendants concede, as indeed it is Fam. Ct. Act law, that the 1028 hearing admits incompetent evidence, hearsay, and even use of the remand order obtained in secret, ex parte proceedings to be used in subsequent 1028 hearing alleged to facilitate the return of the children.

110.     Plaintiffs participation in Fam. Ct. Act 1028 hearing operates as an abrogation right where the appearance in 1028 hearing admits the ability of Defendants to rebut plaintiffs' prima facie right to the return of our daughters. (SEE relevant case law) and can serve to secure the illegal actions mentioned in this Complaint.

111.     Plaintiffs aver defendants were motivated by their own interests at variance with the best interests of plaintiffs" daughters because it is well documented that the foster care and adoption system provides pecuniary benefit to all defendants, but are very harmful and abusive to the daughters involved, in contravention to the purported purposes and Constitutional Limit of statutory authority. (SEE New York Times Article: Suit to Accuse New York City and State of Keeping Children in Foster Care Too Long, by Vivian Yee, July 7, 2015 "Elisa, 16, has been in foster care for more than two-thirds of her life... she was sexually abused in one, punched by her foster mother in another and hospitalized for depression bipolar disorder and post-traumatic stress disorder after several more..." (SEE ACS 'Kids' Gloves: City lets Adopters $coff at Child Law, New York Post, September 16, 2007, pg. 10 "The City has lost track of hundreds of adopted kids even as it continues to pay their parents $19,000 a year per child, the Post has learned...the result is a system vulnerable to abuse, as in the case of Judith Leekin, a Florida mom, accused of taking 1million in New York subsidies for 11 adopted city children while abusing them.. Leekin was found running a house of horrors where she allegedly turned her children into prisoners, tying them up and handcuffing them forcing them to sleep on a tile floor in their own filth, and denying them food and medicine. The full extent of the horror is still being exposed.")

112.     The statute Fam. Ct. Act art. 10 as applied is overly broad in scope, and does not allow a reasonable person to know what is forbidden.

113.     The lack of investigatory training received by employees of agency, and ex-parte proceedings subsequent to taking of daughters is the proximate cause of substantial separation of Plaintiff's Family.

114.     The Family Court Act being one in derogation of the common-law it must be strictly construed.

115. Some of The false information entered in the order dated 25 April 2014 was severed from claims by stipulation of parties in open court. (SEE Transcript)

116. Family Court Act article 10 section 1046 authorizes the claim made by Dr. Michel to be conclusive evidence of guilt.

117. In relation to Moorish-Americans' right to raise and teach daughters sent by Father God Allah, the evidentiary standard of preponderance of the evidence is insufficient to safeguard plaintiffs rights secured by birthrights as Moorish-American and must be under the clear and convincing evidence standard.

118. The Child Protective Notice issued through ACS/NYCSS contains the following clause: FORM 10-5 CHILD PROTECTIVE NOTICE: IF YOUR CHILD IS PLACED IN FOSTER CARE, YOU MAY LOSE YOUR RIGHTS TO YOUR CHILD AND YOUR CHILD MAY BE ADOPTED WITHOUT YOUR CONSENT.

119. The above paragraph 118 demonstrates the substantive infringement of Plaintiff S. Sharpe Sulaymu-Bey and Aleshia M. Sulaymu Bey's rights by forcibly placing daughters into the foster care scheme in the manner outlined in this complaint.

120. The facts of this matter show that Defendants scheme and policy executed to criminalize and punish plaintiffs.


### FIRST CAUSE OF ACTION:

### DENIAL OF: PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS AND

### FIFTH, NINTH AMENDMENT VIOLATION U.S.C.A

(Against Defendants [] [Name of Police Officer 3] and DOES 1 to 100, Inclusive)

119. Plaintiffs re-allege and incorporate by reference, as though fully set forth here, each and every allegation set forth in this complaint..

120. This cause of action is brought pursuant to 42 U.S.C.A. § 1983 and the United States Constitution.

121.   On or before [date of incident], Plaintiffs possessed the rights guaranteed by the United States Constitution, including but not limited to the rights secured by the Fourth and 14th Amendment against unlawful and unreasonable search, seizure, and excessive force by means of unwarranted threats, and the right to be free from unlawful detention and/or arrest by police officers and/or unlawful seizures by social workers or CPS staff acting under the color of law.

122.   In effecting the purported 'removal' of minor Plaintiffs from Mother and Father care and bond under color of law, Defendants undertook the duty to act in accordance with the mandate enumerated F.C.A. Article 10 sec. 1024, [SEE text of statute Attach as Exhibit]

123.   Defendants City by ACS has policy and practice of use of boilerplate forms as basis for seizure and prosecution of Plaintiffs, thereby dispensing with the need to fulfill agency's duty to adequately investigate allegations, in light of asserted rights of plaintiff, as shown in this Petition and Complaint.

124.   There were six municipal employees at the home of plaintiff's, all of whom participated in the above-mentioned acts.

125.   Defendant City by ACS agency has an official obligation to impartially and competently investigate, including the non-delegable duty to impartially and competently investigate the basis of allegations.

126.   Due to Defendant City policy and practices, when ACS employees failed to give notice in compliance with Fam. Ct. Act 1024 et. seq., as described below, Mother was unable to be heard in the matter.

127.   Plaintiff mother possessed documentary evidence showing follow up date of June 6 2014 and assured Agents and employees that Plaintiff Aleshia Bey planned to return for follow-up appointment.

128.   There was no notice given of hearing where ACS employees gave no documentation regarding their actions; Petitioner Mother was not notified that there would be a hearing to judicially review actions taken by ACS employees. No documentation was offered regarding any remedies that were available.

129.   On information and belief, Defendant employees knew or should have known that defendant doctor Michel actions neglected their duty to investigate sufficiently to discover necessary facts that evinced that no objective emergency circumstances existed.

130.   As described in the preceding paragraphs, the conduct of Defendants CATO, WILLIAMS, BEST, toward Plaintiff constituted a violation of the Fourth Amendment to the United States Constitution, inclusive of the

following rights and Liberty Interests: (1) Right to Familial Integrity (2) right to be safe and secure (3) Right to Privacy (4) right to direct religious education? (5) right to grow the Bond between parents and daughters, Jus Sanguinis

131.    On information and belief, defendant City of New York maintains practice of allowing social workers to act as trained medical personnel, to the extent that ACS employees substituted their medical judgment for the express actions of doctor, as a basis made a finding to take daughters from Plaintiff care, where Dr. Michel released the mother with a six- week follow-up appointment.

132.    Defendants CATO, WILLIAMS, and BEST did not receive medical training from their employer defendant CITY OF NEW YORK.

133.    No grave and urgent circumstances existed of a nature to warrant the forceful entry into Plaintiff's private home.

134.    No emergency circumstances existed of a nature to warrant the entry into Plaintiff's home.

135.    No grave and urgent circumstances existed of a nature to warrant the seizure of minor Plaintiffs.

136.    Sgt. Peifer badge number 732 had no authority to use force against the Plaintiff mother.

137.    The acts of all defendants at all times relevant were abusive and oppressive towards Plaintiffs' daughters N.A.S.B., M.S.S.B, A.S.S.B, N.S.B.

138.    As a result of defendant's Gladys Carrion agency and employees acts and omissions to Fam. Ct. in order to obtain "authorization" for seizure the Plaintiffs, family was separated for over six months.

139.    Defendants City's failure to initiate a hearing prior to delay of four days is a violation of Procedural Due Process as mother never consented to give daughter plaintiffs to the state.

140.    Defendants use of ex parte proceedings is the proximate cause for the use of false and omitted exculpatory information resulting in Family Court-order for remand of minor Plaintiffs.

141.    The seizure, that resulted in the detention of infant plaintiffs in Municipal Foster Agency for funding is a violation of requirements under the Fourth Amendment, and any relaxed standard used for seizure or forced transfer of Moorish daughters is an abrogation of defendant's right under Constitution as outlined in this complaint.

142.    Defendants City failed to train and supervise their employees in implementing policies or procedures

which would provide to Plaintiff's notice of the nature and cause of purported 'removal' including but not limited to the following:

    a.    the destination of where daughters would be taken.

    b.    notice of intent to apply for "remand order"

    c.    notice of date and time that the application will be made.

    d.    notice of address of court where application will be made

    e.    notice of right to be present at application

    d.    notice of right to be represented by counsel

    e.    notice of right to apply for child's return

    f.    proof of receipt of notice by parent or guardian.

143.    The conduct described in this complaint was objectively unreasonable and done with willful indifference to Plaintiff's Constitutional rights.

144.    The misconduct described in this complaint was undertaken pursuant to the policy and practice of Defendants City via its NYCCS/ACS agency in that:

    a.) as a matter of both policy and practice defendant city via its NYCCS/ACS agency directly encourages, and therefore is the power behind, the very type of misconduct at issue here by failing to adequately train and supervise its employees and agents, so that its failure to do so shows deliberate indifference;

    b.) s a matter of both policy and practice defendant city via its NYCCS/ACS agency directly encourages, and therefore is the power behind, the very type of misconduct at issue here by failing to adequately punish and discipline iprior instances of similar misconduct, thereby leading Defendant employees to believe that their actions will never be scrutinized. Defendants ACS/NYCCS employees accused of violations of constitutional rights can be sure that the OFFICE of COMMISSIONER will not investigate those accusations or to recommend discipline even when it is

shown that employee violated constitutional rights;

(c) Generally, as a matter of widespread practice so prevalent as to comprise municipal policy employees of NYCCS/ACS violate constitutional rights similar to count alleged by plaintiff on a continuing basis.

145.    Defendants City's failure to train or supervise employees in regard to such policies is the proximate cause behind Plaintiffs suffering severe mental and emotional stress, anguish etc.

Plaintiff's Mother assertion of nationality and religious beliefs to doctor on 24 April 2014 during the course of the appointment

146.    By Defendants Gladys Carrion, Kathy-Ann Best, CITY OF NEW YORK, proffering false information and omitting exculpatory information to which agents were informed, or necessarily should have been within their knowledge, is the proximate cause of extended separation of Adult and minor plaintiff's.

147.    On 25 April 2014, Defendants acted specifically with the intent to deprive Plaintiffs of the following rights under the United States Constitution:

(a) Freedom from unreasonable searches;

(b) Freedom from unreasonable seizures in the form of unlawful detention and/or arrest by police officers;

(c) Freedom from a deprivation of Liberty without due process of law;

(d) Freedom from summary

(e) Freedom from threat of harm under color of law; and

(f) Freedom of Privacy

148.    Defendants subjected Plaintiffs to the mentioned deprivations either by deliberate indifference or reckless disregard for their rights under the United States Constitution and the laws of *[name of state]*. through unauthorized, yet established practices, customs and procedures and thus did not fear any repercussion from Defendant City, or Defendant BEST, CATO, WILLIAMS, PFEIFER, DOES 1-3, in taking the unlawful action against Plaintiffs.

149.    The above mentioned misconduct committed by all Defendants was outrageous and arbitrary or

conscience-shocking, in violation of Plaintiff's substantive Due Process Right to Life and Liberty.

### SECOND CAUSE OF ACTION: CONSTITUTIONAL VIOLATIONS UNDER

### FOURTH AMENDMENT  (SEARCH AND SEIZURE & INVASION OF PRIVACY CLAIMS)

150.    Plaintiffs re-allege and incorporate by reference, as though fully set forth here, each and every allegation

set forth in the above paragraphs.

151.    Defendants failed to obtain a court-order or warrant that otherwise may have authorized Defendants

Linda Cato, Kathy-Ann Best or Nikia Williams, Police employee Sgt. Pfiefer and DOES 2-4, to perform a search

of Plaintiff's home

152.    The entry into and search of plaintiff's residence was conducted without the presentation of a search

warrant upon request, authorizing defendant police officers to enter and search plaintiff's residence, resulting in

illegal detention of minor Plaintiffs.

153.    Adult Plaintiffs caused to be delivered several correspondence and notice detailing the rights and

national standing, including interrogatory to Defendant city officials and employee Kathy-Ann Best prior to

seizure of minor Plaintiff's

154.    Defendants failed to obtain a court-order or warrant that otherwise may have authorized Defendants

Linda Cato, Kathy-Ann Best or Nikia Williams, Police employee Sgt. Pfiefer and DOES 2-4, to perform a

seizure of minor Plaintiffs from their private home.

155.    Assaulted Plaintiff Aleshia M. S.B. and illegally seized, detained and/or arrested minor Plaintiff s with

reckless disregard of minor Plaintiffs rights secured by the constitution of United States Of America, as set forth

in detail in Plaintiffs factual allegations.

156.    Defendant CITY OF NEW YORK (CITY) Police Department's official policies, practices and customs

and the individual officers' errors, omissions, and deliberate indifference deprived Plaintiffs of clearly

established constitutional federal right to, among other things,  personal safety and security, in contravention to

the Fourth Amendment.

157.    As described in the preceding paragraphs, the conduct of Defendants, and each of them, toward Plaintiff

constituted a violation of the Fourth Amendment to the United States Constitution, inclusive of the following

rights and Liberty Interests: (1) Right to Familial Integrity (2) right to be safe and secure and safety of possessions (3) Right to Privacy (4) right to be free from unreasonable search and seizure (5) right to grow the Bond between parents and daughters, Jus Sanguinis

158.     Commissioner of ACS, Ronald Richter and Gladys Carrion received a written petition and notice regarding municipal agency's child removal policies and notice of Plaintiff's family status via certified mail in exercise of Plaintiff's First Amendment rights. Commissioner chose not to respond to written Notice and interrogatory.

159     The misconduct described in this complaint was undertaken pursuant to the policy and practice of Defendants via its NYCCS/ACS agency and New York City Police Department in that:

  a.) as a matter of both policy and practice defendant city via its NYPD/ACS agency directly encourages, and therefore is the power behind, the very type of misconduct at issue here by failing to adequately train and supervise its employees and agents, so that its failure to do so shows deliberate indifference;

  b.) s a matter of both policy and practice defendant city via its NYPD/ACS agency directly encourages, and therefore is the power behind, the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Defendant employees to believe that their actions will never be scrutinized. Defendants ACS/NYPD employees accused of violations of constitutional rights can be sure that the OFFICE of COMMISSIONER will not investigate those accusations or to recommend discipline; at worst be placed on paid vacation admin. Leave, even when it is shown that employee violated constitutional rights;

  (c) Generally, as a matter of widespread practice so prevalent as to comprise municipal policy employees of defendants violate constitutional rights similar to count alleged by plaintiff on a continuing basis.

160.     Defendants City's failure to train, supervise or punish its employees in effect of such policies is the

proximate cause behind Plaintiffs suffering severe mental and emotional stress, anguish etc.

**PARTIES**

161.    Plaintiffs are the *jus sanguinis* mother and father and of  N.S.B, N.A.B., M. S.B., A S.B.

162.    Defendant City of New York is a municipality duly organized and existing under the laws of NEW YORK STATE Defendant ACS/NYCCS is an official agency or subdivision, New York City is a Municipal corporation incorporated pursuant to the laws of New York. Defendants ACS child protective Services is authorized by

163.    As Commissioner in a position of trust, defendant Gladys Carrion or her agents were obligated to respond to questions posed by possible interaction with agency (ACS) via Interrogatory Writ.

164.    Defendant Gladys carrion is Commissioner of ACS/NYCCS and nis sued in her individual and official capacities.

165.    As Commissioner of ACS, defendant is responsible for ACS compliance with National Constitution and Statutes and regulations of State of New York.

166.    As Commissioner of ACS defendant Gladys Carrion is responsible for meting out and approving policies for ACS, including policies regarding the investigation of alleged child abuse or maltreatment and the removal and detention of child from their families and the training and supervision of employees in ACS.

167.    Upon information and belief defendant Nikita Williams, Sasha Dawson, Linda Cato and Kathy-Ann Best were employed by defendant city as caseworker for ACS.

168.    Plaintiffs also,   in an attempt to engage agency superiors or policymakers, said interrogatory was the driving power behind agents actions of disregard for constitutional and statutory safeguards.

169.    Upon information and belief defendant Sasha Dawson was employed by defendant city as supervisor for ACS.

170.    Upon information and belief defendant Sasha was employed by defendant city as manager of ACS.

171.    Upon Information and belief Defendant Health and Hospitals Corporation is a Not-for-profit corp. established pursuant to the laws of the State of New York. Defendant HHC owns and operates a facility located at KINGS COUNTY, NEW YORK. Known as KINGS COUNTY HOSPITAL.

172.    Upon Information and belief, during the period 24 April 2014, defendant Michel was a physician,

licensed to practice medicine in the state of New York

173.    Upon Information and belief, Dr. Michel was on contract, with defendant City, as a medical expert to ACS protective custody and to assist and advise ACS regarding the investigation and prosecution of cases of alleged child abuse and neglect and to testify as an expert in child abuse and neglect proceedings in N.Y. Fam. Court.

174.    Upon Information and belief, at the time of April 24 2014, defendant Dr. Michel was under contract with defendant Health and Hospitals Corporation to examine and treat children who were patients at that Hospital, prior to working with behavioral health department in KCH.

175.    Although licensed as a physician, Dr. Michel has become a zealot as regards the calling in Defendant Dr. Michel has caused by a bad faith call to diagnosed child as having conditions

176.    Defendants Phifer and Bond are police officers of defendant city and at all times mentioned in this complaint were acting under color of law and color of their authority as police officers of defendant city.

177.    Adult Plaintiffs S. Sulaymu-Bey and Aleshia Sulaymu-Bey were under extreme duress during the entire action and focused on being restored with society with daughters. The Family Court Judge stated in response to Plaintiffs request to confer with a key witness prior to examination by ACS/NYCCS Corporation Counsel that "the longer you delay is the longer your [wife's] children stay in foster care. Do you understand that sir?"

178.    All of the aforementioned acts of Defendant police were ministerial acts set out by social workers, or dept. within agency (ACS)

179.    Plaintiffs re-allege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the preceding paragraphs.

180.    Fam. Ct. Act Article 10 acts as

181.    Plaintiffs re-allege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above paragraphs

182.    Defendants took daughters not in furtherance of an investigation, or any proof of neglect or abuse but

based *inter alia*, on an unconstitutional and unlawful presumption that Plaintiff would not act reasonably.

183.     At all times mentioned Defendant City of New York, operated according to policies and customs that was the power behind the violation of plaintiffs constitutional rights and proximate cause of damages, in that plaintiffs have suffered, and will continue to suffer, damages, as described, as well as to incur attorney's fees, costs and expenses in the underlying case and in this matter severe mental and emotional distress and anguish etc.

184.     As the direct and proximate cause of the mentioned acts of Defendants, Plaintiffs suffered psychological injury, physical injuries, and severe emotional distress.

### THIRD CAUSE OF ACTION (FIRST AMENDMENT CLAIMS: (RETALIATION; DENIAL OF FREE EXCERCISE OF RELIGION, VIOLATION OF 42 U.S.C. 2000 RELIGIOUS FREEDOM RESTORATION ACT; RELIGIOUS LAND USE PROTECTION ACT)

(against all defendants)

185.     Defendant City has effectively established religious preference for Christian based religious agency for the placement of children, as 95% of foster agencies are historically Christian-based.

186.     Upon seizure of minor Plaintiffs Defendants subsequently placed within the confines of a Christian based organization EDWIN GOULD AGENCY, subcontractor of ACS agency,

187.     The seizure of daughters in the manner outlined in this complaint constitutes a substantial burden on plaintiffs Religious Exercise. Plaintiffs were unable to practice our religion or culture by which we are commanded to, among other things, care for and teach plaintiffs' daughters in matters the state "can neither supply nor hinder."

188.     Fam. Ct. Act. and its administration by Defendant City, as applied, is nothing more than an attempt to regulate the raising of Moorish daughters in their religious belief.

189.     Plaintiff Mother exercised her First Amendment freedoms in her interactions with Defendants.

Plaintiff S. Sharpe Sulaymu-Bey and Aleshia Sulaymu-Bey exercised First Amendment freedom to complain to Public officials by sending written notices out prior to seizure of daughters.

190. Plaintiff S. Sharpe Sulaymu-Bey and Aleshia Sulaymu-Bey also delivered via its employee, KATHY ANN BEST, correspondence that complained to Public Officials said notice to be delivered to Defendant City agency, who received the correspondence in her hand personally.

191. The correspondence received by Commissioner Gladys Carrion Office and Governors Office raised issues regarding its policies in the seizure of children, and policies of agency implicating genocide etc., that created a constitutional obligation on commissioner.

192. On information and belief, Defendants were motivated to punish adult Plaintiffs for expressing views about her nationality and Divine Creed, beliefs and nationality.

193. Adult Plaintiff's caused to be delivered several correspondence and notice detailing the rights and national standing, including interrogatory to Defendant city officials and employee Kathy-Ann Best prior to seizure of minor Plaintiff's. [FIRST AMEND. MONELL DUE PROCESS]

194. Plaintiffs caused the correspondence to be delivered to Defendants CITY, because Defendant municipal agency's claimed educational negligence and filed two petitions in relation to Plaintiffs private education of school age daughters.

195. The claim was of course false, and the agency withdrew the petitions on 25 April 2014.

196. During the confinement and detention of plaintiffs in facility that was effectively maintained to hold minor plaintiffs, plaintiffs were restricted the right to exercise religion and heritage consistent with the birthright of plaintiffs, is a substantial burden on plaintiffs' Religious Exercise.

### FOURTH COUNT: FEDERAL CONSPIRACY TO DEPRIVE
### CONSTITUTIONAL RIGHTS

#### (By all Plaintiff's against all Individually named defendants)

197. Each of the above paragraphs is re-alleged here by incorporation, as if stated fully restated here.

198. The acts described in this count were committed with malice, and willful indifference to the

rights of others.

199.    On information and belief, on 24 April 2014, of the constitutional injuries suffered by Plaintiff's in this case, the defendants Dr. Michel, working through customs set in place by KINGS COUNTY HOSPITAL/ HEALTH HOSPITALS CORPORATION conspired with Defendants CATO, BEST, WILLIAMS, and Bradley Smith Corporation Counsel to punish plaintiff because knowing that her prior acts were done Defendant literally continued to lie and make claims that Defendant Dr. Michel knew had no truth to them in order to indulge her desire to punish plaintiff for doing what the law allows her to do: bring her daughter for a medical checkup. The claim advanced  by Dr. Michel was made, among other things, to advance her discrimination against Plaintiff based on her national origin and Divine Creed, especially relating to specific types of medical treatments. and defendant Dr. knew to a certainty that the abuse claim would allow others who are willing to participate, as long as her  for among other things,   action to coerce and intimidate accomplish an unlawful purpose through an unlawful means.

200.    In furtherance of the conspiracy, on 25 April 2014, Defendant BEST, CATO, and DAWSON concealed the existence of the initial hearing, in order to employ the custom of defendant CITY in exercising the control of the family court. unlawful seizure of plaintiffs daughters unilaterally be committed overt acts and was a willing participant in a joint activity in order to ensure that plaintiffs would not be able to have daughters except through the use of unconstitutional 1028 hearing, or judges order. Defendants and each of them agreed to omit exculpatory information obtained in relation to filing petition

201.    As a proximate result of the conspiracy, Plaintiff's suffered financial damage and mental stress and anguish

202.    The misconduct described in this count was undertaken pursuant to the policies and practices of Defendants City in the manner described more fully in the preceding paragraphs.

203.    In furtherance of the conspiracy plaintiffs competent investigation required by Due Process in

its administration of seizure and removal of children.

204.   In furtherance Defendant Doctor Michel agreed to make a claim of "failure to thrive" in order to advance

Dr.s personal agenda, and among other things, to receive finance through contracts with Defendant ACS and

various and diverse sources of funding. KINGS COUNTY HOSPITAL,  and , to fulfill Defendant Dr. Michel's

desire to see plaintiff Aleshia Sulaymu-Bey suffer.

### FIFTH CAUSE OF ACTION: UNLAWFUL SEIZURE AND FORCE (ILLEGAL OR IN

### THE ALTERNATIVE EXCESSIVE) NEW YORK STATE CONSTITUTION ARTICLE 1

### SECTION 12 CLAIM (against Defendant City and all individually named defendants)

205.   Plaintiff's re-allege and incorporate each and every one of the above paragraphs as though stated

fully here.

206.   As described in the above paragraphs, the actions of Defendants City, CATO, WILLIAMS,

BEST, CHARLES PIEFER badge number 732, Detective David Small, Police agents Terry Riley, and

Michaelangelo Medina forcefully and illegally breached door of private home without warrant, and

posturing and body language of Policeman Sgt. Pfeifer, and the offensive and the unlawful touching of

Plaintiff caused her to sustain physical injuries to her head, neck and shoulder.

207.   As a result of the actions of those police employees plaintiff Aleshia received physical and

psychological and emotional injuries.

208.   The misconduct described in this count is a violation of Constitution For State of New York

Article 1 section 12 and was intentional.

209.   The misconduct described in this count was undertaken within the scope of defendants

employment such that their employer, Defendant CITY OF NEW YORK is liable for their actions

under *respondeat superior*.

210.   The force used by defendant Charles PEIFER in the manner outlined in this complaint is a

violation of Constitution For State of New York Article 1 section 12.

### SIXTH CAUSE OF ACTION: VIOLATION OF THIRTEENTH AMENDMENT

**(Badges an Incidents of Slavery; Involuntary Servitude, against City defendants)**

211.   Plaintiff's re-allege and incorporate each and every one of the above paragraphs as though stated fully here.


212.   Defendants and each of them have pecuniary interests in the seizure and placement of daughters, as well as to teach Plaintiffs that plaintiffs rights are not to be respected so long as claim is made, as well to punish plaintiffs for exerting will for benefit of plaintiffs self-interest.

213.   Defendants and each of them injured plaintiffs by saddling plaintiffs, by force, with legal disability of not being able to defend against injury to family and by effectively denying plaintiff access to court hearing in front of ROBERT MULROY F.C.J., and said F.C.J. willfully participated in said violation with the rubber stamp, thus staining the order with false information.

214.   On 25 April 2014, Minor Plaintiffs were forcefully seized by European Caucasian Police employee, and injury inflicted against Plaintiff A.M. Sulaymu-Bey, a Moor of copper- skin tone, on mere opinion or claim of Defendant Dr. Michel and turned over to state foster care where Minor Plaintiffs were forced to serve the for the benefit of DEFENDANTS, under threat of physical discipline.

215.   Defendant CITY OF NEW YORK, as part of its policy and practice routinely administrates provisions of facially neutral laws denial of substantive and procedural DUE-PROCESS to those persons Agency incorrectly perceives as black/latino, to high instances of seizure and removal in areas of its asserted jurisdiction (nyc) more prevalent than it does in the rest of NEW YORK Agency. Denial of rights to due Process, disregard of Family Unit upon claim of physician party with out individualized determination based on careful deliberation, but based on administrative policies, express and implied, and accepted procedures, that form a custom of Defendants CITY and its employees, and that result in forceful separation of families by use of armed police that it perceives and labels as black/latino etc. based on Religious belief and national origininstitutions similar to slavery

216.    Defendants acts and omissions deprived Parents of Divine Rights and Rights secured by the Thirteenth Amendment to the Constitution of United States of America, including:

(a.)    Minor Plaintiffs birthright consists of the right not to be 'seized' or 'recaptured' in the manner authorized by Defendant City in the execution of it's policies attaching incidents of slavery to Plaintiffs.

217.    Plaintiffs were forced to serve the ends of Defendant via its "awesome power of the state" because Defendants, and each of them, conspired to deprive plaintiffs of their rights secured by, *inter alia,* Article VI cl. 2, 8 stat. 100-104 , and the First, Fourth, Fifth, Ninth, Thirteenth and Due Process Clause to Constitution.

218.    Right to be free from the legal restriction of not receiving notice of hearing on 25 April 2014 that purported to 'remand' daughters into custody of Agency in furtherance of Defendants policy and custom of attaching incidents of slavery to those it erroneously perceives and/or classifies as black/ african american or latino.

219.    On information and belief, Defendant City employees documented that adult Plaintiffs have refused services. On information and belief, Defendant City, via its employees proffered said 'refusal of services' as a basis for the seizure of minor Plaintiffs.

220.    On information and belief, Defendant City, via its employees proffered said 'refusal of services' as a basis for the 'remand order' used to restrain minor Plaintiff's right and freedom to sociedad with mother and father *jus sanguinis.*

221.    The policy and practice of Defendants in using administrative policy, custom and unlawful presumptions or claim of party, in lieu of constitutionally-adequate investigation in violation of substantive Due Process right to remain a family unit or maintain family integrity in relation to those whom it perceives as black or latino, mimics the incidents of slavery prohibited by the Thirteenth Amendment.

## SEVENTH CAUSE OF ACTION VIOLATION UNDER 18 U.S.C. 1595;
## PEONAGE, TRAFFICKING

( By Plaintiffs against all City Defendants except medical defendant)

222.    Plaintiffs re-allege and incorporate each and every allegation in this complaint as though

restated fully here


223.    Defendants acted without authority, and willfully ignored any provision of law inconsistent with

defendants wholly separate interests and agenda, including receiving pecuniary intertests from divers

sources. (SEE FAMILY COURT ACT SEC. 116; FAM. COURT ACT 1024, Social services law 373)

224.    Defendants, and each of them, formed a combination amongst them and forced plaintiffs to

perform services, i.e. forcing daughters into foster care system to receive a benefit, in the manner

outlined within each and every allegation in this complaint, and all incorporated by reference,

constituting claims under 18 U.S.C. 1589.  Defendants, and each of them abused the legal process of

New york Maltreatment statutes in the manner outlined in this complaint, in order to exert pressure on

defendants never to assert or exercise plaintiffs right, nor Divine Obligation of Care and Protection of

plaintiffs daughteres, also to humiliate plaintiffs into serving the ends of defendants although

Defendants and each of them injured Plaintiffs, which constitutes violation of 18 U.S.C. 1589(c)1. .

225.    Defendants knowingly benefitted from the actions from expected pecuniary benefits, prestige

among cohorts, and other things, as mentioned throughout this complaint, and constitute a violation of

18 USC 1591 and 1595.


### EIGHTH CAUSE OF ACTION: FAILURE TO INTERVENE VIOLATION OF
### 42 U.S.C. 1983 (in alternative)

226.    Plaintiff's re-allege and incorporate each and every allegation enumerated in the preceding

paragraphs

227.    On 25 April 2014, Defendants police were present at plaintiffs private home, and no agent of

CITY intervened or attempted to recite facts known to defendants, as enumerated in this complaint, at

time of breaking in and forcible seizure, although one female officer stated to plaintiff Aleshia

Sulaymu-Bey that "you will get your 'kids' right back", but no agent intervened to protect Plaintiffs constitutional rights although informed and asserted.

228. During the assault of Plaintiff Aleshia S. Bey, policman Terry Riley and another policewoman were present during policeman Charles Peifer assault of Plaintiff.

### NINTH CAUSE OF ACTION: FALSE ARREST UNDER 42 U.S.C 1983

228.    Plaintiff re-allege and incorporate each and every allegation as though restated fully here. Plaintiffs rights derived from treaty and secured by National Constitution as alleged were violated.

229.    Defendants intentionally confined plaintiffs after forcible entry; plaintiffs were totally aware of the confinement, and did not consent to such confinement, as stated in every factual allegation in this complaint.

230.    As a direct and proximate result of Defendants actions Plaintiff's suffered severe psychological and emotional distress. Defendants Acts were intentional and oppressive. Plaintiffs are entitled to general and compensatory damages in an amount to be proved at trial. Plaintiff's are also entitled to punitive damages as to the individually named Defendants because they acted with reckless disregard for Plaintiff's rights

### TENTH CAUSE OF ACTION: MONELL CLAIM against CITY NEW YORK

229.    Plaintiff's re-allege and incorporate each and every factual allegation enumerated in this complaint.

230.    Defendants City failed to train and supervise their employees in establishing or implementing  policies or procedures which would provide to Plaintiffs notice of the nature and cause of purported 'removal' and opportunity to be heard, including but not limited to the following:

   a.      the destination of where daughters would be taken,

   b.      notice of intent to apply for "remand order"

   c.      notice of date and time that the application will be made,

d.     notice of address of court where application will be made

e.     notice of right to be present at application

d.     notice of right to be represented by counsel

e.     notice of right to apply for child's return

f.     proof of receipt of notice by parent or guardian.


231     Defendant City of New York fails to train and supervise their employees on constitutional procedural and

substantive protections and rights under the constitution.

232.    As a direct and proximate result of Defendants actions Plaintiffs suffered severe psychological

and emotional distress. Defendants Acts were intentional and oppressive. Plaintiffs are entitled to

general and compensatory damages in an amount to be proved at trial. Plaintiffs are also entitled to

punitive damages as to the individually named Defendants because they acted with reckless disregard

for Plaintiff's rights.

233. The acts and customs of defendant CITY injury-causing behavior is not an isolated incident or

confined to Plaintiffs. The seminal class action case Nicholson v Williams 203 F.Supp.2d 253 (2002),

which documents unconstitutional ":removals", to which agency seems incapable to remedy.

234.    Similarly, evidence of the custom of Defendant City shown in article, NY: CASEWORKER

QUICK TO TAKE CUSTODY AWAY: Order Taking Custody Of New Mom Vacated. The author, A.

David Tommelleo J.D., a nationally recognized authority on health care law, stated "This appears to be

a case where would be 'do-gooders' were determined to take a baby from her mother without just

cause. Some may wonder whether they had other motives." (SEE Medical Law Cases Of Note attached

as EXHIBIT AL

235. Defendant agency custom and scheme was also employed against plaintiffs regarding an education

claim that was false, however due to policy and custom of defendant City in omitting exculpatory

evidence inits investigations, and prosecuting plaintiffs regardless of exculpatory facts within the

knowledge of agency, and attempted to bring allegations against plaintiffs that were withdrawn, defendants fail to train its employees on the fair and lawful use of past information later found to be unsubstantiated in a manner that safeguards the rights of plaintiffs as shown in this complaint.

## ELEVENTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION

236.    Plaintiffs re-allege and incorporate each and every allegation enumerated in the preceding paragraphs

237.    Defendants City should have known through reasonable inquiry that police Defendant Charles Peifer was unfit for duties of an officer at the time he was hired, and his unfitness has become known to defendant City,. including complaints filed with CCRB regarding Charles Peifer, and his dangerous and recklessness caused physical injury to plaintiff Aleshia S. Bey; however City negligently retained defendant.

238.    As a direct and proximate result of Defendants actions Plaintiffs suffered severe psychological and emotional distress. Defendants acts were intentional and oppressive. Plaintiffs are entitled to general and compensatory damages in an amount to be proved at trial. Plaintiffs are also entitled to punitive damages as to the individually named Defendants because they acted with reckless disregard for Plaintiff's rights

## TWELFTH CAUSE OF ACTION: NEGLIGENCE PER SE

### (against defenadants Health and Hospitals Corporation and Kings County Hospital and City of New York via ACS)

239.    Plaintiffs re-allege and incorporate each and every allegation enumerated in the preceding paragraphs

240.    On 25 April 2014, Defendant City, CATO, WILLIAMS, BEST, and police defendants, inclusive

of DAWSON, manager/ supervisor, utterly failed to perform its duty pursuant to enabling statute

FAMILY COURT ACT 1024, in relation to the seizure, where Plaintiffs asked police employees for

warrant or court-order, and police DOE 1 stated "we don't need one", and all agents from agency

refused to provide Plaintiffs with the requisite duty following the seizure of minor daughters.

241.    The misconduct of Defendants caused Plaintiffs to suffer unreasonable search and seizure, false

imprisonment, and emotional distress.

242.    The misconduct of Defendants caused adult Plaintiffs to suffer extreme psychological and

emotional distress and anguish

243     Defendants had a statutory duty pursuant to Family court act 1024, and other provisions of

Family Court Act Defendants City failed to train and supervise their employees in establishing policies or

procedures which would provide to Plaintiffs notice of the nature and cause of purported 'removal' including but

not limited to the following:

    a.    the destination of where daughters would be taken,

    b.    notice of intent to apply for "remand order"

    c.    notice of date and time that the application will be made,

    d.    notice of address of court where application will be made

    e.    notice of right to be present at application

    d.    notice of right to be represented by counsel

    e.    notice of right to apply for child's return

    f.    proof of receipt of notice by parent or guardian.


244.    The injury and harm to plaintiffs was a foreseeable consequence of the acts of defendants and is

the direct and proximate cause of injuries and damages suffered by Plaintiffs  in an amount to be

proved at trial.

245.    The procedures in Family Court Act would have eased some of the pain inflicted on plaintiffs

where at least some basic information as to exact whereabouts of daughter would be known.

246. The acts and omissions of all Defendants, and the natural results and consequences of the same,

caused unreasonable risk of injury to Plaintiffs.


**THIRTEENTH CAUSE OF ACTION: VIOLATION OF FREE EXERCISE OF**

**RELIGION New York Constitution Article 1 Freedom of religion**

(against Dr. Michele, CITY OF NEW YORK, KINGS COUNTY HOSPITAL, and HEALTH

AND HOSPITALS CORPORATION, by all Plaintiff's)

247.    Plaintiff's incorporate and re-allege each and every allegation stated in this complaint as though

restated here fully.

248.    Defendant Dr. Michel acts and omissions as were undertaken  at all times relevant during her

employment with Health and Hospitals Corporation via Kings County Hospital, such that her employer

is liable for Dr. Michele actions under *respondeat superior*.

249.    Defendants CHARLES PIEFER, Detective David Small, Police agents Terry Riley, and

Michaelangelo Medina, Gladys Carrion, Nakia Williams and Linda Cato, and Kathy-Ann Best, were

employed at all times relevant by their employer CITY OF NEW YORK, such that CITY OF NEW YORK

is liable for their actions under *respondeat superior*.

250.    Defendants interest in effecting suibstantiasl burden on plaintiffs Free Exercise of Religion by

violating rights secured by the Federal Constitution is minimal.

251.    Dr. Michel owed a professional duty of care to Aleshia M. S. Bey, plaintiffs by undertaking

daughters to receive medical check-up. Plaintiffs were injured as a result of Dr. Michel acts and

omissions, such that damages resulted.


**FOURTEENTH CAUSE OF ACTION: FEDERAL CLAIM OF CIVIL CONSPIRACY**

252.    Each of the above paragraphs is re-alleged here by incorporation, as if stated fully restated here.

253.    The acts described in this count were committed with malice, willful indifference to the rights

of others.

254.    As described more fully in the preceding paragraphs, the Defendant ACS employees CATO,

BEST, and WILLIAMS, DAWSON and DOES 1-4, inclusive of JANE DOE social worker and Dr.

Michel, and other known and unknown conspirators, conspired by concerted action to accomplish an

unlawful purpose through an unlawful means, by, among other things, conspiring to commit acts of

unreasonable violence in order to seize daughters, *jus sanguinis,* devoid of judicial authorization and

intentional disregard of Plaintiff's rights, and by the misconduct described in the preceding paragraphs,

Defendants conspired to deprive Plaintiffs of the proper use of the courts, and agreed to misrepresent to

the court the point at which the police became involved, and or ability to receive a second opinion

regarding the health of Plaintiff's oldest and youngest daughters.

255.    In furtherance of the conspiracy, each Defendant committed acts described above, including

arriving at Plaintiff's private home with 4 armed police prior to any contact with Plaintiff A.M.

Sulaymu-Bey, as well as various overt acts and was a willing participant in a joint activity.

256.    As a proximate result of the conspiracy, Plaintiff's suffered financial damage mental stress and

anguish.

257.    The misconduct described In this count was undertaken pursuant to the policies and practices of

Defendants City municipal agency ACS in the manner described more fully in the paragraphs outlined

in this Complaint.

258.    Plaintiff's are informed and believes, and therefore alleges that ACS/NYCCS agency instituted a

policy and practice of implementing unlawful presumptions in lieu of the unbiased, competent

investigation required by Due Process in its administration of seizure and removal of children.

259.    At all times mentioned Defendant Dr. Michel's acts and omissions were conducted during the course of

her employment such that her employer, KCH, is liable for her actions.

**FIFTEENTH CAUSE OF ACTION: ADMINISTRATION OF FACIALLY NEUTRAL CHILD**

**PROTECTION LAWS AS INSTITUTION AND PRACTICES SIMILAR TO SLAVERY, IN**

**VIOLATION OF CIVIL RIGHTS BILL 1866**

260.    Plaintiffs re-allege and incorporate each and every allegation in this complaint, as though restated fully here.

261.    Plaintiffs as Moorish-Americans, have rights vested in the proper administration of facially neutral laws that abrogate the right to be forever free pursuant to Executive Will of Abraham Lincoln as stated in executive orders of Abraham Lincoln 1 December 1862; 1 September 1863; 8 September 1863; 22 September 1863; as birthrights and nationality of Moorish-Americans held in abeyance since 1774 and declared 'forever free" by said enactments embodied in Thirteenth Article  Amendment with 20 sections as evidenced in Congressional Globe,

**SIXTEENTH CAUSE OF ACTION, UNITED NATIONS DECLARATION ON HUMAN RIGHTS;**

**CONVENTION ON THE PREVENTION AND PUNISHMENT OF THE CRIME OF GENOCIDE,**

**VIOLATION OF 78 U.N.T.S 277, 28 I.L.M. 763; SUPPLEMENTARY CONVENTION ON ABOLITION**

**OF SLAVERY, THE SLAVE TRADE, AND INSTITUTIONS AND PRACTICES SIMILAR TO**

**SLAVERY; 18 U.S.C. 1091(a)4 and (a)6**

262.    Plaintiffs re-allege and incorporate each and every allegation in this complaint, as though restated fully here.

263.    Plaintiffs' family is a separate and distinct group from "duly authorized societies" including principals, of EDWIN GOULD SERVICES, descended from the Ancient Moabites and Canaanites.

264.    Defendants, by the acts as outlined in this complaint, forcefully transferred daughters of Moorish-American group to another group, EDWIN GOULD SERVICES, which was founded as a European  Catholic-based organization; and the scheme and custom of defendant CITY OF NEW YORK, as outlioned in this complaint, by deliberately inflicting on the Moorish group conditions of life designed to destroy in whole or in part plaintiffs' group.

265.    Defendants CITY OF NEW YORK has failed in its duty under Articles 1,3,5,6 and 8 under 18 U.S.T. 3201, 266 U.N.T.S. 3, and inter alia, article 1 under 78 U.N.T.S 277, 28 I.L.M. 763

266.     The acts and conduct of defendants in the manner outlined in this complaint breached this duty, and was performed knowingly and intentionally, by reason of which plaintiff is entitled to an award of punitive damages in the sum of $2.34 million dollars, or in such amount as will sufficiently punish defendants for their willful and malicious conduct and as will serve as an example to prevent repetition of such conduct in the future. .

267. The acts sand omissions of Defendant CITY in failing to fulfill its duty caused plaintiffs to suffer damages and injury.

## SEVENTEENTH CAUSE OF ACTION:

### TORTIOUS INTERFERENCE WITH BIRTHRIGHT (against all defendants)

268.     Plaintiffs recount and re-allege each and every allegation above as if restated fully here.

269.     Defendants knew by virtue of the existence of the *jus sanguinis* and *jus soli* relationship existing, and through several correspondence between plaintiffs prior to 25 April 2014

270.     Plaintiffs are tied together by birthright relations consisting of among other things, to possession of familial bond, right to care and direct education; Rights of Father to raise daughters, *jus sanguinis*, Right to be at Liberty and Freedom in our possessions and estate, right not to be summarily removed or, free from compelled movement in the manner Defendant City practices, evidenced in General Laws of Massachussets 1787-Chapter 54 An Act for Suppressing and Punishing Rogues, Vagabonds, common Beggars, and other Idle, Disorderly And Lewd Persons, Feb. Sess., chap. 21;  8 stat. 100-105;484-487.

271.     Defendants unlawfully and recklessly interfered with said right and possession in the manner outlined in this complaint.

272.     Defendants actions is the proximate cause injury and damage was inflicted upon plaintiff's psychological, emotional and physical capacities.

### EIGHTEENTH CAUSE OF ACTION: CONSPIRACY TO DEFRAUD:

### MEDICAL FRAUD (against Dr. Michel, Cato, Best, Dawson, Carrion, Williams)

273.     Plaintiffs re-allege and restate fully here each and every allegation incorporated by reference.

274.     Defendant Dr. Michel assured plaintiff Aleshia M. Sulaymu-Bey that Doctor had arranged for six week follow up appointment for minor plaintiff and that Dr. would "agree to disagree" (SEE Hearing transcript

attached as EXHIBIT)  and dates subsequent as regards plaintiff mothers beliefs regarding vaccinations, etc. and

plaintiff Aleshia Sulaymu-Bey acknowledged doctors suggestions for foods, excluding animal flesh and meats.

275.    Defendant Dr. Michel misrepresented the fact of six-week follow-up appointment to plaintiff; but had

knowledge that based on her own agenda and interests, that Dr. Michel intended that there would be no

appointment by calling maltreatment register to assert claims of abuse or maltreatment, although the defendant

knew that such claim is false, which under New York Law is a crime. (SEE New York Consolidated Laws , Penal

law - PEN section 240.50 section 4(a)(b)

276.    Based on the apparent health and well-being of plaintiff's daughters, meeting with social worker from

KINGS COUNTY HOSPITAL who also is a reporter under NEW YORK scheme to report instances of

maltreatment, and evaluation by physician Dr. Kisung Kim entered into KINGS COUNTY HOSPITAL medical

records,  where, on 25 April 2014, the defendants arrived at plaintiffs home with armed uniformed police,

Plaintiff Aleshia S. Bey relied on this misrepresentation by Defendant Dr. Michel and asserted her constitutional

rights at the door, based on facts stated in this count. caused mental anguish and distress and confusion and fear

or apprehension of danger

277.    On information and belief, Defendant Dr. Michel knew that her claim of maltreatment or abuse was

recklessly made without regard to its truth; thereafter defendant then unduly influenced and/or conspired with

Dr. Kisung Kim who had initially entered his own assessment and plan that N.S.B. was hydrated, active,

nourished, and testified that the assessment was based on Dr. Kisung Kim's "observation, knowledge, and

training." (SEE certified Trial Tr. 26:1-3, 19-21, Sept. 10, 2014. ), to thereafter change falsely the medical

records, in anticipation of the results that would follow her acts.

278.    Dr. Michels misrepresentations, concealments and ommissions had the effect of inducing the

ACS/NYCCS AND N.Y.P.D. agents to act, and inducing plaintiff Aleshia S. Bey to put her guard down as relates

to getting a second opinion to Defendant Doctors claim.; had said acts not been done, no service based on claim

would issue.

279.    Defendant Dr. Michel's fraudulent omission of the facts tending to expose her scheme when making the

report were concealed thereby inducing

**NINETEENTH CAUSE OF ACTION: ACTION IN DAMAGES BY INTENTIONAL CONDUCT RESULTING IN FORESEEABLE HARM IN NATURE OF DEROGATION OF DUTY PER SE (PRIMA FACIE TORT)**

>**(against defendants Health and Hospitals Corporation and Kings County Hospital and City of New York via ACS)**

280.    Plaintiff's re-allege and incorporate each and every allegation enumerated in the preceding paragraphs

281.    On 25 April 2014, Defendant City, CATO, WILLIAMS, BEST, and police defendants, inclusive of DAWSON, manager/ supervisor, intentionally refused to perform its duty pursuant to enabling statute FAMILY COURT ACT 1024; FAMILY COURT ACT section 116; SSL 373.

282.    There is no excuse or justification for harms caused by defendants in the Derogation of defendants duty under statute, as ADMINISTRATION FOR CHILDREN'S SERVICES/NYCCS is a creature of the legislature and must obey mandates of its enabling statute.

283.    Plaintiffs suffered damages to business and damages incurred as the result of costs associated with defending suit, and an interruption of plaintiffs normal business.

284    Defendants had a statutory duty pursuant to Family court act 1024, and other provisions of Family Court Act intended to provide to Plaintiffs' notice of the nature and cause of purported 'removal' and opportunity to be heard, including but not limited to the following:

>a.    the destination of where daughters would be taken,
>
>b.    notice of intent to apply for "remand order"
>
>c.    notice of date and time that the application will be made,
>
>d.    notice of address of court where application will be made
>
>e.    notice of right to be present at application
>
>d.    notice of right to be represented by counsel
>
>e.    notice of right to apply for child's return

f.      proof of receipt of notice by parent or guardian.

285.    The procedures duty enumerated in Family Court Act sections as mentioned in this count  is a recognition of basic right of mother to daughter or child, and would have eased some of the pain inflicted on plaintiffs where at least some basic information as to exact whereabouts of daughter would be known.

286.    The injury and harm inflicted on plaintiffs was a foreseeable consequence of the acts and omissions of defendants and is the direct and proximate cause of injuries and damages suffered by Plaintiffs in an amount to be proved at trial.

287.    Defendants intentionally caused Plaintiffs to suffer emotional distress and anguish.

**TWENTIETH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (AGAINST ALL DEFENDANTS)**

288.    Defendants CHARLES PIEFER, Detective David Small, Police agents Terry Riley, and Michaelangelo Medina, Gladys Carrion, Nakia Williams and Linda Cato, and Kathy-Ann Best and CITY OF NEW YORK owed a duty of care to plaintiffs because the well-documented history of invasion of reights of affected parties as shown in numerous court filings indicate a foreseeable risk of harm in defendants conduct.

289.    Defendants breached the duty to operate with Due Care in the manner outlined in this complaint.

290.    As a result of defendants actions, plaintiffs suffered physical injury, severe emotional distress and damages in an unspecified amount.

WHEREORE, Plaintiff's respectfully request that this court enter judgment in their favor and against Defendants, and each of them, awarding Plaintiffs declaratory and injunctive relief, compensatory

damages, attorney fees, along with punitive damages, in amounts (to be determined at trial, against the Defendants in their individual and official capacities), as well as any other relief this court deems just and proper.

I hereby declare that to the best of my knowledge and information I affirm that to the best of my knowledge, information and belief, that the complaint is not meant to mislead or cause delay, and that the same is true to my knowledge except as to those matters explicitly or implicitly alleged on information and belief, and as to those matters I believe them to be true.

Dated!
DECEMBER 12, 2017

Shannoon S. Sulaymu-Bey

136-04 222 street Laurelton, N.Y. 11413

(347) 243-8026

Aleshia M. Sulaymu-Bey

136-04 222st laurelton, N.Y. 11413

347-243-9973

EXHIBIT

A1

# Medical Law Cases of Note



Meet the Editor & Publisher: A. David Tammelleo, JD, is a nationally recognized authority on health care law. Practicing Law for over 40 years, he concentrates in health care law with the Rhode Island firm of A. David Tammelleo & Associates. He has presented seminars on medical, nursing and hospital law throughout the United States. In addition to his writings as Editor of *Medical Law's, Nursing Law's & Hospital Law's Regan Reports*, his legal articles have been published in the most prestigious health law journals. A prolific writer, his thousands of articles, as well as his achievements as an attorney and lecturer, have won him recognition in Martindale-Hubbell's *Bar Register of Preeminent Lawyers*, Marquis *Who's Who in American Law*, *Who's Who in America* and *Who's Who in the World*.

## NY: Caseworker Quick to Take Custody Away: Order Taking Custody from New Mom Vacated!

**CASE FACTS:** On December 14, 2006, a 19 year-old gave birth to a son, Jayvien E., at Beth Israel Medical Center. After delivery, a nurse came to the mother's room and began to push on her stomach. The mother asked the nurse to stop. When the nurse continued to push, the mother became upset and yelled at the nurse to stop. That evening, the mother called and requested that an unwanted visitor, the baby's father, be removed from her hospital room. Security was called and the baby's father was removed. The next morning, a medical student overheard the mother calling her baby "greedy" and "too much." As a result, the hospital conducted a psychiatric consult on the mother. Dr. A. Newfield, a psychiatrist, stated in his report that when he first encountered the mother, she was in bed holding and feeding her son, and she appeared fairly groomed, well-related with appropriate eye contact, seemingly reliable and cooperative. His report noted that the mother had an "unclear" psychiatric history. During his second visit later that day, Dr. Newfield was accompanied by Dr. Kato. When the two first arrived the mother was asleep. After being awakened, the mother appeared less well-related, and ignoring the conversation at times, and was uncooperative. He recommended that the New York City Administration for Childrens Services (ACS) be contacted to determine the mother's history and to evaluate what should be done with her son. Dr. Kato prepared a similar report. However, he emphasized that the mother was uncooperative and suggested that depression/anxiety be ruled out. Further, he expressed concern about the mother's ability to safely care for the baby. Neither mentioned how long they spent with the mother. Nurse flow sheets consistently reflected normal mother-child interaction and stated she did "not display any psychiatric symptoms." However, after an ACS social worker conducted an investigation, ACS filed a Family Court petition for a finding that the mother was not a suitable person to have custody. ACS's case essentially relied on past incident reports reflecting the mother's arguments with her mother and grandmother. The Family Court found that Jayvien E. was a neglected child and placed the child with his maternal grandmother pending the completion of the next permanency hearing.

**COURT'S OPINION:** The Supreme Court of New York, unanimously reversed the order of the Family Court and dismissed the case, noting that the law and the facts showed no evidence neglect. The court found no imminent threat of harm to the child. Curiously, the caseworker failed to contact Dr. Newfield, despite the fact that she admitted that it was important to have done so. This appears to have been a case where would-be "do-gooders" were determined to take a baby from her mother without just cause. Some might wonder whether they had other motives. *In re Jayvien E.,* 2010-00892 (2/9/2010) -NY

## NY: Cataract Patient Sues for Complications: Summary Judgment for Hospital--Partial for Dr.

**CASE FACTS:** After having blurred vision in his right eye for six months, Frederick Horn saw Dr. Samuel Guillory, an opthalmologist. Dr. Guillory diagnosed a cataract in the eye, which had a decreased corrected vision of 20/60. Dr. Guillory performed cataract surgery on September 22, 2006, at Mount Sinai Hospital. During surgery, a tear occurred in the posterior capsule, causing the vitreous and lens fragments to prolapse through the tear. Dr. Guillory performed an anterior vitrectomy to remove the vitreous and lens fragments. He believed that he had removed all of the cortical material, but stated that sometimes microscopic parts can be retained. Dr. Guillory saw Horn the next day and noted that his vision was 20/70 and that he had mild cystoid macular edema (CME). A topical anti-inflammatory steroid and antibiotic drops were prescribed. Dr. Guillory next saw Horn on September 27, at which time his CME had increased. The drops were continued. When Horn next presented on October 4, his cornea was edematous. Dr. Guillory referred Horn to a colleague, Dr. Fuchs, a retinal specialist, who noted mild to moderate CME and a residual cortical fragment in the posterior part of the eye. Dr. Fuchs agreed that Horn should stay on the anti-inflammatory drops. Horn next saw Dr. Guillory on October 10, and was continued on the drops. When Dr. Guillory saw Horn on October 25 with complaints of increasingly blurred vision, Dr. Guillory found that the CME had worsened and that Horn's vision was 20/400. Dr. Guillory again referred his patient to Dr. Fuchs, who saw him that day. Dr. Fuchs informed Dr. Guillory that he had found retained cortical material and CME, and the patient was advised to continue with his medication. Dr. Fuchs stated that Horn might be a candidate for a periocular/intravitreal injection of steroids in the future, and that if the CME did not respond to anti-inflammatories, surgical removal of the residual cortical material was another option. Horn consulted with Dr. David Yarian, a retinal specialist, who noted that the patient's vision was 20/200 and that there was significant inflammation. He notified Dr. Guillory that it was possible there were other remnants present, which would only be visible with scleral depression at the time a vitrectomy was performed. Dr. Yarian recommended a more aggressive approach. Horn brought suit against Dr. Guillory and Mount Sinai. Both filed for summary judgment.

**COURT'S OPINION:** The Supreme Court, New York County, ordered that the branch of the motion for summary judgment in favor of Mount Sinai Hospital be granted. The court ordered the branch of the motion for summary judgment in favor of Dr. Guillory be granted only to the extent of dismissing the plaintiff's cause of action, which sounded in lack of informed consent. It was otherwise denied. *Horn v. Guillory,* 031210 NYMISC, 2010-30555 (3/12/2010) -NY

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

S. Sharpe Sulaymu-Bey, *en propria persona*                :
Aleshia M. Sulaymu-Bey, *en propia persona*             :
                                                                                     :
                                                                                     :
                                                                                     :
                                                                                     :
                                                         :CASE NO: 17-CV-3563
                                                                                     :
                       **PLAINTIFFS**                          :
                            against                                 :
CITY OF NEW YORK; GLADYS CARRION, individually and in       :
 her capacity as COMMISSIONER OF ACS/ NYCCS,      :
SASHA DAWSON, individually and in her
capacity as employee OF ACS/ NYCCS, KATHY ANN BEST :
 individually and in her capacity as employee OF ACS/ NYCCS,  :
 LINDA CATO  individually and in her
capacity as employee OF ACS/ NYCCS,                        :
NAKIA WILLIAMS,  individually and in her
capacity as employee OF ACS/ NYCCS,                        :
Michaelangelo Medina; Detective David Small; Officer Terry RILEY :
Seargeant CHARLES PIEFER individually and in their,      :
capacities as employees OF NEW YORK CITY POLICE DEPT.  :
LUCIANA MICHELE, individually and as physician,           :
KINGS COUNTY HOSPITAL, HEALTH AND HOSPITALS :
CORPORATION                                                              :
                                        **DEFENDANTS**         :
                                                                                     :      **JURY TRIAL DEMANDED**



---

CERTIFICATE OF SERVICE FOR AMENDED COMPLAINT

I, S. Sharpe Sulaymu-Bey, certify that, on ꝏDecember 2017, caused, for plaintiff Aleshia

M. Sulaymu-Bey, a copy of Amended Complaint to be served on defendant the City of

New York, former Commissioner Gladys Carrion, Sasha Dawson, Kathy-Ann Best, Nakia

Williams, Sergeant Charles Peifer, Detective David Small, Officer Terry Riley, Officer

Michaelangelo Medina, Dr. Luciana Michele, Kings County Hospital, New York City

Health and hospitals Corporation, defendants, by mailing a copy in a duly addressed

envelope, with first class postage prepaid to Evan Schnittman, attorney of record for

defendants, 100 Church Street, Room 2-182 New York, New York 10007

All parties required to be served have been served.

Dated :
12 Dec. 2017

S. Sharpe Sulaymu-Bey

136-04 222street

Laurelton, NY 11413

929-403-4585