1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2

3   --------------------------------X
                                    :
4   S. SHARPE SULAYMU-BEY, *as next* :
    *friends and on behalf of N.S.*  :
5   *Bey and A.S. Bey and through*   :
    *their Parents and Guardians,*   :
6   *S. Sharpe Sulaymu-Bey,*         :
    *on behalf of all others*        :
7   *similarly situated,*            :
                                    :   17-CV-03563 (AMD)
8               Plaintiffs,          :
                                    :
9               v.                   :   225 Cadman Plaza East
                                    :   Brooklyn, New York
10  CITY OF NEW YORK, *et al.,*      :
                                    :   December 5, 2019
11              Defendants.          :
    --------------------------------X

12

13       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE SANKET J. BULSARA
14             UNITED STATES MAGISTRATE JUDGE

15  APPEARANCES:

16  For the Plaintiffs:        MUSTAPHA LAKPENE NDANUSA, ESQ.
                               26 Court Street
17                             Suite #603
                               Brooklyn, New York 11242
18

    For the Defendants:        RACHEL K. MARCOCCIA, ESQ.
19                             CAROLYN ELIZABETH KRUK, ESQ.
                               New York City Law Department
20                             General Litigation Division
                               100 Church Street
21                             New York, New York 10007

22  Court Transcriber:         RUTH ANN HAGER, C.E.T.**D-641
                               TypeWrite Word Processing Service
23                             211 North Milton Road
                               Saratoga Springs, New York 12866

24

25


    Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

2

1  (Proceedings began at 10:05 a.m.)

2         THE COURT:  Okay.  We're here for a status

3  conference in 17-3563.  Can the parties state their names for

4  the record, please?

5         MR. NDANUSA:  For the plaintiff Mustapha Ndanusa, 26

6  Court Street, Suite 603.  Good morning, Your Honor.

7         THE COURT:  Good morning, Mr. Ndanusa.  Your client

8  is here, right?

9         MR. NDANUSA:  He is.

10         THE COURT:  He can come up and sit at counsel table.

11         MS. MARCOCCIA:  Good morning, Your Honor.  Rachel

12  Marcoccia --

13         THE COURT:  Hold on one second, please.

14         MR. SULAYMU-BEY:  Good morning, Your Honor.

15         THE COURT:  Good morning.  Can you state your name

16  for the rec -- just so it's clear on the record, please?

17         MR. SULAYMU-BEY:  Indeed.  S. Sharpe Sulaymu-Bey.

18         THE COURT:  Okay.  Good morning, Mr. Sula --

19         MR. SULAYMU-BEY:  I'm on own behalf today.

20         THE COURT:  Good morning, Mr. Sulaymu-Bey.

21         MR. SULAYMU-BEY:  Good morning.

22         MS. MARCOCCIA:  Good morning, Your Honor.  Rachel

23  Marcoccia with the New York City Department.  With me is my

24  colleague Carolyn Kruk.

25         MS. KRUK:  Good morning.

1            THE COURT:  Good morning.  So, you know, we have I

2  think a couple things that are going on here.  First, there

3  is -- they may unfortunately lead to the same result, but

4  Mr. Ndanusa has filed a motion to withdraw as counsel.  There

5  was an affirmation that was filed in support and Mr. Sulaymu-

6  Bay does not wish to have Mr. Ndanusa continue on as his

7  lawyer and his spouse's lawyer.  That's correct, right?

8             MR. SULAYMU-BEY:  That's correct.

9             THE COURT:  Okay.  So that's one issue.

10           Then there is an issue about the settlement of the

11  case.  There are some papers that I think were sent earlier

12  but they're only recently put on the docket where

13  Mr. Sulaymu-Bey wishes to withdraw or rescind his oral

14  agreement to the settlement.

15           Now, the -- a couple things and some of this may

16  not be resolvable here.  I'm sure the defendants have a view

17  as to the ability to rescind the agreement or not and in light

18  of the fact that it's only recently come on the docket I will

19  certainly give you an opportunity to respond to that in

20  writing.  That's the first thing.

21           MS. MARCOCCIA:  Well, and, Your Honor, if I may,

22  this is -- I -- the first time that we saw the papers was less

23  than an hour ago.  We weren't served with these before they

24  were filed on the papers, so we're just learning of this.

25             THE COURT:  I understand, so that's exactly what I

4

1  just said.

2          MS. MARCOCCIA:  Right.

3          THE COURT:  There's no reason to -- that's why I'm

4  giving you the time.

5          MR. SULAYMU-BEY:  And also, Your Honor, just to be

6  clear for the record, we did file a motion and we're moving

7  for Mr. Ndanusa to be removed --

8          THE COURT:  I understand.

9          MR. SULAYMU-BEY:  -- a cross-motion.

10          THE COURT:  That's the other -- that's what I call

11  the first issue, that Mr. Ndanusa can continue as counsel,

12  then there's the settlement agreement itself.  I actually

13  think the settlement agreement was mailed, just put on the

14  docket, west of my pro se clerk, an hour ago.

15          So I'm not sure that there was any -- I'm not sure

16  it was served an hour ago.  It may not have reached your

17  offices or et cetera, but we'll figure out -- you'll certainly

18  have enough time to respond.

19          Mr. Sulaymu-Bey, let me say a couple of things,

20  okay, because I haven't decided because they have to file an

21  opposition to this -- to this motion.  Just so you understand

22  where this potentially puts the case, okay, number one, on the

23  motion to withdraw, okay, there are two parts to this.  Okay.

24  One is that it is rare that in the late stage of a case courts

25  permit lawyers to withdraw.  Okay.  That's just a reality of

5

1  the way it works.  Part of that is because of the need to have

2  a case continued to move forward and the court not have to go

3  back and forth between pro se and counsel and give time to get

4  additional counsel and the like.

5          That being said, I recognize there may have been

6  unusual circumstances here because it's not just counsel

7  seeking to withdraw.  It's the client wishing not to have the

8  client -- the counsel represent him.  And so there's a little

9  bit of a -- there's a lit -- in a situation where counsel

10  wishes to withdraw is one thing, but there's generally an

11  unfettered right to fire your lawyer if you wish.  The Court

12  can't force someone to be the person's lawyer.  The situations

13  and the cases talking about withdraw being inappropriate at

14  late stages of the case talk about when a counsel wishes to

15  withdraw say they're not getting paid, et cetera, et cetera,

16  et cetera.  So we're in a unique situation.

17          But the first element of that is that we have to

18  grapple with this set of issues that generally disfavor

19  withdrawal of counsel at the late stage.  There is the

20  counterveiling concern as I mention about client prerogative

21  and client choice.

22          The second thing, which may be more pertinent, is

23  that without counsel because Mr. Ndanusa is also representing

24  your minor children, it may be impossible, even if you wanted

25  to go forward with the settlement for the settlement to go

6

1    forward without having counsel be present for the children.

2           Ms. Kurk, you're looking at me puzzled this entire

3    time.  What's up?

4           MS. KURK:  Ms. Marcoccia.

5           THE COURT:  Ms. Marcoccia, I'm sorry.

6           MS. MARCOCCIA:  I'm just listening.

7           THE COURT:  Oh, okay.  I thought you -- I may have

8    misunderstood something you had said.  And I think there may

9    be some hesitancy on the City's part to permit the settlement

10   agreement to be executed without the children having counsel.

11   Okay.  In other words, if they were simply proceeding pro se.

12          So -- and the City may also frankly because there

13   was a global agreement not be willing to settle at all with

14   you and your spouse if there's not also a settlement with your

15   children.  Okay.  So there's the issue of withdrawing as

16   counsel complicates the ability to get a global settlement.

17   Okay.  Is -- is there something to be raised on this point?

18          MS. MARCOCCIA:  No, Your Honor.  I was just

19   clarifying something with my colleague.

20          THE COURT:  Okay.  Does the City have a view as to

21   whether or not they would --

22          MS. MARCOCCIA:  Actually, Your Honor, I would just

23   like clarification as to what the parents' position is, again

24   having just gotten the papers in the last hour?

25          THE COURT:  Can we wait on this?  I'm going through

1   these issues in a way not to prejudice all of you and I --

2   is -- do you have anything to say about the issue?

3           MS. MARCOCCIA:  Well, the other reason I ask Your

4   Honor now is because the other plaintiff isn't here so I also

5   wanted to raise with you whether we should get her on the

6   phone if that's possible.

7           THE COURT:  Well, first of all, counsel is still

8   present until counsel has been -- and so I'm not going to --

9   you know, they have counsel until counsel is withdrawn.  I

10  also don't understand what that would accomplish.  You seem to

11  have -- my question is, which was the point I was trying to

12  deal with, what is the City's position should a motion to

13  withdraw be granted about the execution of the settlement

14  agreement by the parties' proceeding or the plaintiffs

15  proceeding *pro se*?

16          MS. KURK:  I think we would need time to discuss

17  that and discuss it with the controller and our client because

18  the understanding at this point was that we would be

19  proceeding globally.

20          THE COURT:  No, no, I understand that.  My -- that's

21  the second issue.  My question is, if the settlement stayed

22  and it was a global settlement --

23          MS. KURK:  Yes.

24          THE COURT:  -- is there any problem from the City's

25  perspective of the papers being executed and allocuted in

8

1    front of the Court by the parents proceeding in a *pro se*

2    capacity?

3           MS. KURK:  As long as -- I mean, we'd have to -- I'd

4    have to do a little research because historically, with all

5    due respect, I haven't researched this issue.  We've always

6    had -- you know, they require counsel in order to represent

7    their children in a removal action to this --

8           THE COURT:  This is --

9           MS. KURK:  But if Your Honor is satisfied and

10   willing to sign off on the infant compromise order and we can

11   craft something that addresses any concerns, then we would

12   certainly be willing to proceed and get, you know, creative,

13   if necessary, because our interest is certainly not disrupting

14   the settlement to the extent that we can make it work and that

15   everyone is satisfied.

16          THE COURT:  Okay.  Because I don't -- it doesn't --

17   there was some elusion in your papers to the ability of

18   counsel -- or elusion to the fact that counsel may be

19   necessary and that's what I was trying to understand, what the

20   basis for that was, because as far -- you know, the infant

21   compromise order would never be signed by counsel.  It would

22   be signed by the parents subject to the supervision of the

23   Court and they're under certain obligations and discrete bank

24   accounts and all the like that accompany such situations.

25          So I didn't understand the basis for -- and if you

9

1  were still taking that position because that makes part two --

2  in other words, continuing along with the settlement far more

3  complicated because if I were to grant the request to counsel

4  be removed then before I could even discuss whether or not the

5  settlement is enforceable and continuable you're required

6  to -- you're asking me to resolve the question of whether or

7  not the children need separate counsel which they -- you know,

8  when the plan is proceeding in a *pro se* capacity they never

9  had before either.  So, okay, you can think about that, but

10  that's what your papers seem to suggest and I didn't know

11  offhand what the basis was for that.

12        Okay.  Well, let me -- Mr. Sulaymu-Bey, there may be

13  some complications if, you know, I grant the motion to

14  withdraw and your children don't have separate counsel in

15  terms of getting a global settlement.  So that's the first

16  thing.  Okay.  Or rather that's the second part of the

17  complication on the motion to withdraw.  Okay.  What do we do

18  about your children and their ability to go forward in the

19  case and litigate.

20        Then there is the question of you seeking to

21  withdraw your agreement to the settlement at all.  Okay.  Now,

22  the City is going to have an opportunity to respond to t hat

23  motion that you filed, but here are a few things.  Number one

24  is I've only glanced at your papers, but they appear to

25  withdraw consent as to part of the settlement.  In other

10

1   words, the children's component and not the parental

2   component.  Is that correct?

3           MR. SULAYMU-BEY:  That's correct.

4           THE COURT:  Okay.

5           MR. SULAYMU-BEY:  Just to the extent that all the

6   agreement was formed on October the 11th with respect to the

7   plaintiffs in the case, which was myself, my queen, Aleshia M.

8   Sulaymu-Bey, and that agreement we -- it possibly could be a

9   formed agreement.

10          So in the vein of, you know, what was said to

11  Aleshia Sulaymu-Bay, her -- she's totally against this

12  settlement.  However, the -- she was against the amount.  As

13  counsel spoke with her during the deposition she had a

14  different amount that she wanted to settle for that they asked

15  about.  They asked her that in the deposition.

16          THE COURT:  Well, let --

17          MR. SULAYMU-BEY:  However, I just wanted to say,

18  Your Honor, that your -- to answer to that question that the

19  two plaintiffs in the case would be willing to move forward to

20  the extent that agreement was formed.

21          THE COURT:  Okay.  So let me step back one second.

22  I think there are two parts to that, okay.  One is the

23  City because of the parameters of the settlement is unwilling

24  to go forward, as I understand it, with just a settlement of

25  you, you and your spouse, okay, an not include the children.

1   That's the first thing.

2           So I think if you wish to withdraw and we're going

3   to talk about whether you can or whether an agreement was

4   formed in a second, but if that were to sort of transpire,

5   okay, then there would be no settlement at all, okay, for you

6   or your spouse, most likely.  Okay.  That means you'd be

7   forced to litigate the case and I will tell you right now the

8   City will never settle the case given what's transpired in

9   such circumstances.

10          MR. SULAYMU-BEY:  Objection, Your Honor.  When you

11  said that they would never settle, I think you should clarify

12  that.  You're saying they were never settle.  I'm thinking

13  that's a little bit, you know --

14          THE COURT:  You can't object to anything I might --

15          MR. SULAYMU-BEY:  Just my own, you know --

16          THE COURT:  -- say.  Well, anyway.

17          MR. SULAYMU-BEY:  My opinion.

18          THE COURT:  Well --

19          MR. SULAYMU-BEY:  Interjection, not objection.

20  Interjection.

21          THE COURT:  So they -- I'm making a prediction.  It

22  could be wrong.  Let's leave it that way, okay?

23          Now, that's the first part is that -- but -- and the

24  second part of it was, you know, the settlement conference was

25  clearly -- and your counsel was clearly representing not only

1  you and your spouse, but also your children.  And it was a

2  global negotiation.  It was a global settlement conference and

3  it was placed on the record.  There were particular

4  discussions about your children and how much they would

5  receive.  And it's, you know, an oral contract, an oral

6  agreement.

7          Now, because there was not separate components that

8  were -- you know, it was -- and neither side -- and I'll go

9  back and listen to the argument and confirm and we can create

10 a transcript -- was proceeding under the ability to withdraw

11 parts if they didn't like parts or for the children to have --

12 you know, continue and keep their claims or not and it was an

13 all-or-nothing compromise, as it were.

14          MR. SULAYMU-BEY:  I would interject, if I may, Your

15 Honor.

16          THE COURT:  Go ahead.

17          MR. SULAYMU-BEY:  Quickly.  That the failure of

18 Mr. Ndanusa to effectively represent my daughters at the

19 settlement conference, right, combined with the consumement

20 [ph.] of the basis for his fees, the encouragement to accept

21 that settlement amount without us being proper informed of

22 what his fees would be in that case, the lack of adequate

23 legal research in terms of the settlement and the defendants

24 who -- and the counsel who stated that there was only a

25 certain amount that they could get from counsel -- from the

1  comptroller, I'm sorry.  They could only get a certain amount

2  from the comptroller.

3       And when we review <u>Sutherland v. City of New York</u> as

4  cited, which was actually a settlement -- a settlement case or

5  a settlement that didn't go through, we see that that is

6  basically the information that was presented to Your Honor.

7  It was not necessarily a fact in terms of that.

8       THE COURT:  So Mister --

9       MR. SULAYMU-BEY:  So basically the reason why the

10  settlement cannot go through is because it's damaging to my

11  daughters, you know, because of -- for the reasons I've just

12  mentioned.

13       Now, if the -- the defendants -- and if we have to,

14  the whole settlement has to be -- they're not willing to

15  settle at all, you know, then I can't -- I have no choice but

16  to proceed forward because our daughters don't have a fair and

17  reasonable claim based on their representation.

18       THE COURT:  Well, let me be clear.  I'm not sure.  A

19  couple things.  They haven't made a representation directly to

20  you.  Okay.  And I've made various representations to you

21  about what I thought was possible in the settlement and what

22  was not possible in the settlement.  Okay.  And that's in the

23  context of a settlement.

24       Lots of other cases settle for other amounts -- are

25  litigated to other amounts.  Every case is different. Every

14

1   case has risks, every case has benefit as I explained to you

2   and your counsel at the settlement conference.  And, you know,

3   I understand your -- counsel is seeking to withdraw without

4   imposing a lien, is that correct?

5           MR. NDANUSA:  No, that's incorrect, Your Honor.

6           THE COURT:  You're seeking a lien?

7           MR. NDANUSA:  Charging [indiscernible].

8           THE COURT:  Okay.

9           MR. NDANUSA:  Only against as -- just to be clear,

10  only as against the parents, not as against the children.

11          THE COURT:  Okay.  And so there's no fees being

12  taken out of your children's recoveries if I understand the

13  way the charging lien is being sought.  In other words, it's

14  free and clear of any liens.

15          Look, you know, there was a clear oral agreement

16  there, in my view, and I'll review what the defendants have to

17  say and I'll review what the case law has to say, but

18  you're -- the fact that there are other cases that settle for

19  different amounts is not a basis to withdraw.  It's not also a

20  basis to conclude that anything you were told was false or

21  incorrect.

22          MR. SULAYMU-BEY:  That's not -- Your Honor, that's

23  not the basis for the withdrawal.  That's the basis for the

24  rescission of the --

25          THE COURT:  I'm sorry.  It's not a basis to rescind.

1          MR. SULAYMU-BEY:  If the ba -- that is the basis of

2     the rescission of the agreement based on <u>Bastedo v. North-Rose</u>

3     <u>Wolcott Central School District</u>, 929 F. Supp. 2d. 223-224.

4     That was a similar case where a complaintive [sic] was given

5     some information about the liability insurance that a

6     municipality had and upon that that plaintiff finding out that

7     that municipality had a cert -- had a greater amount of

8     insurance, they were able to rescind that agreement.

9          However, that's not the basis for the withdrawal.

10    The basis for the withdrawal is inadequate representation of

11    our daughters because Mr. Ndanusa never informed us that by

12    accepting the settlement -- by accepting the global demand as

13    Counsel Kurk invited him to, that that would mean that that

14    would mean that he would be deemed to be representing our

15    daughters because he told me specifically when I asked him

16    prior to that he had no intent on representing my daughters

17    and on his experience in representing minors is very slim.

18         THE COURT:  But I don't understand why -- I have a

19    little bit trouble following, okay, which is that he was

20    representing your daughters at the conference.

21         MR. SULAYMU-BEY:  That's why I had no -- I had no

22    information about that, Your Honor.  I was mistaken about

23    that.  I was not given the proper -- it was not explained to

24    me properly because our daughters were removed from the

25    complaint, right, pursuant to Rule 15 -- 15(c) and it was

16

1   related back.  So there were only two plaintiffs in the case.

2   Now, that's *nunc pro tunc*.

3          Now, when counsel -- defense counsel Kurk made the

4   suggestion to Mr. Ndanusa, I was not present and Aleshia was

5   not present during that time.  When it was accepted on that

6   behalf and it was subsequently I was told that there was a

7   request for a global, I had no idea what that is, my

8   understanding was that it was a number, right, but I didn't

9   know that he would be deemed to be representing them.   I

10  didn't -- I had no information about that.  Nothing was

11  explained or --

12          THE COURT:  But how does that affect --

13          MR. SULAYMU-BEY:  -- right [indiscernible] --

14          THE COURT:  Okay.  Assume that -- for a moment that

15  you're correct about that, which is a big assumption based on

16  what I know, but assume that you're correct.  What's the basis

17  to conclude that your children were disadvantaged in any way?

18  Because to establish that, right, okay, it's not about the

19  amount they received.  Okay.  It would be something that

20  like -- it would have to be something like he put -- your

21  lawyer put your interests ahead of your kids' interests or

22  something like that.  That -- there's an amount that you think

23  should be higher, okay.

24          MR. SULAYMU-BEY:  No, it's not about the amount,

25  Your Honor.  It's about the fact that the legal research that

1  was done it was not probative of my daughters' claims.  So

2  since their claims were not on the record, the claims were not

3  differentiated from our claims it is very highly unlikely that

4  they received a fair and reasonable settlement.

5         I mean, even if you look at -- if we look at the

6  Sutherland v. City of New York, 99 C.V. 03329, document 164,

7  filed August 2, 2006.  The attorney for that case went in

8  detail on the damages that may have been suffered by the

9  children in that case.  That was Sutherland that was mentioned

10 by the Court that day on 10/11.

11        THE COURT:  Mr. Sulaymu-Bey, that was a case that

12 was litigated for a really long time, years and years and

13 years.

14        MR. SULAYMU-BEY:  Okay.

15        THE COURT:  But it was a different case.  That 's

16 the whole point and -- but that doesn't have anything to do

17 with in terms of whether the amount your kids are receiving is

18 fair and reasonable under the settlement.  In other words --

19        MR. SULAYMU-BEY:  Kind of misconstruing what I'm

20 saying, Your Honor.  I'm not saying that it has anything to do

21 with the amount.  That's not the reason for the withdrawal.

22 It had nothing to do with the amount.  It's the fact that by

23 comparing the two cases we can -- I can see the difference

24 between the level of representation of the --

25        THE COURT:  Oh, okay.  I understand that.  But --

18

1          MR. SULAYMU-BEY:  -- children.  That's what I'm

2     saying.

3          THE COURT:  Okay.  I understand that, but why would

4     that be a reason you would still not be comfortable going

5     forward with the global settlement because I understand that

6     you may be dissatisfied, may even think it arises to a legal

7     deficiency, the representation you received versus what your

8     kids received, right, which I understand that -- that's what

9     you're trying to say and that you had -- in your view that,

10    you know, your lawyer represented you adequately, may not have

11    represented your kids adequately and there's a differential

12    and you see through the cases that what that difference was.

13         But if the settlement amount is fair and reasonable,

14    okay, by pressing this forward, right, what you're potentially

15    doing, okay, is giving up your ability to -- and their ability

16    to recover financially in a fair and reasonable amount because

17    of -- and never being able to get that again, in other words.

18    It's a somewhat -- because the -- on one -- there's two

19    reasons for that.  One is the City may not settle with you and

20    your spouse if the kids are not involved.

21         As you say, that's my prediction, but they may not

22    do that at all.  But the second thing is, you know, if your

23    children go on their own path and litigate their own claims in

24    the future, okay, they may never recover anything and they'd

25    also have to potentially restart their process, you know, when

1  they reach an age of maturity and we start a new process with

2  or without counsel and where they may not get anything.

3  Okay.  In other words, if you thought the amount was

4  fair and reasonable that they received, even though you may

5  believe that your lawyer didn't take on adequate

6  representation but the amount achieved is fair and

7  reasonable --

8  MR. SULAYMU-BEY:  But that's the issue.  It can't be

9  fair and reasonable based on the -- for whatever reasons the

10  representation was not on the proper level to explore their

11  claims, so the amount cannot be -- inherently it's not fair

12  and reasonable.

13  THE COURT:  Well, maybe, maybe not.  I mean, I will

14  tell you that when I was evaluating the case and making

15  representations to both sides about the risks and benefits

16  that they do, I do that based on my view of what -- and again,

17  it's just my view, but on what the facts and the law provide.

18  Okay.  And sometimes we have -- and I'm not making any

19  judgments about lawyers on either side, but we settle lots of

20  case where the lawyers do a great job and lawyers do a

21  terrible job and lawyers do jobs in the middle, right.

22  But the reason to have clients here, okay, is so

23  that they can hear from me directly about what the risks and

24  benefits are and they can evaluate for themselves what the

25  value of a claim is, what it means to go forward, et cetera.

1   And, you know, part of my job is to do that irrespective of

2   what the lawyers say because I'm speaking directly to the

3   client.  Right?  That's why they're here.  And I will tell

4   you, as I tell everybody, in the context of a settlement

5   negotiation I don't -- I see the -- I call the risks as I see

6   them, right?

7          In other words, for you to have another settlement

8   conference without your counsel here involving your children

9   and the amounts that were discussed, I would say the same

10  thing given what I understand about settling what the risks

11  are and what the facts are as I know them.  Okay.  And so

12  nothing from what you heard from me would change it all.

13          MR. SULAYMU-BEY:  Just to be clear, Your Honor, in

14  the Bastedo case, it was not the court who made the

15  misrepresentations.  It was what was said to the court because

16  in the Bastedo case as well there were similar pattern of, you

17  know, speaking to one side in a separate room coming out, now

18  the only representation I'm referring to is when I --

19  presumably defense counsel said to you they had to call the

20  comptroller in order to make a certain call for a certain

21  amount.  So that's what I'm referring to.

22          It's not saying that the Court made a

23  misrepresentation but in terms of making that call to the

24  comptroller --

25          THE COURT:  But here's the thing.  Every case is

1  unique and in every case involving the city -- I shouldn't say

2  every case.  In many cases counsel calls to get authority.

3  Okay.  But that authority is based on the facts and

4  circumstances of a particular case.  It doesn't mean that, you

5  know, there is a giant -- you know, I can make them or ask

6  them to call the comptroller office and ask for a billion

7  dollars to give you to settle.  They're never going to come up

8  with a billion dollars and I was going to say no.  I can ask

9  them to say -- call and ask for the same amount in <u>Sutherland</u>,

10 right?  And I make judgments about whether that call is -- ask

11 them to make that call as effective, productive, likely to

12 succeed.  We can't make parties settle.  And the fact that

13 other cases involve other amounts doesn't mean each case is

14 settled on its own merits.  No.

15         So we can go back and forth about this.  What I

16 think I need to do is have the defendants respond to the

17 motion in writing.  I'm going to say a couple things, right?

18 You have to be aware of two -- you should consider two

19 possibilities, okay.  Number one is, you know, there's a whole

20 body of case law out there that talks about, you know, oral

21 agreement and settlement agreements and the agreement to

22 settle and what that means is that settlement agreement.

23         The second is, you know, if you are seeking

24 enforcement of the agreement that was placed on the record,

25 you're left to consider, well, what does that mean if you

22

1  can't get the releases and other necessary document signed and

2  you're just getting what amounts to the enforcement of the

3  financial terms.  And you know, in other words, you know,

4  notwithstanding what are the terms of the agreement, right.

5  The court is not in a position, right, to force, you know,

6  people's signature on document and agree to written terms like

7  releases and setting up bank accounts and even compromise

8  orders and the like, right.  And so a motion to enforce would

9  have the value of enforcing the global terms with the other

10  terms not necessarily falling into place.

11         So just before you say you're opposing the motion,

12  you should think about, you know, what you're asking and what

13  that actually gets you or doesn't get you because even if

14  Mr. Sulaymu-Bey is wrong about being able to rescind his oral

15  agreement, then the oral on the global there is little means,

16  as far as I can tell, of enforcing the other terms that the

17  parties or at least the City would want in a written

18  settlement agreement.

19         The second part, I should say, is if it appears that

20  Mr. Sulaymu-Bey is not willing to settle -- is willing to

21  settle the parents' claims only which, you know, this lawsuit

22  you should think about what that amount is whether you'd be

23  willing to consider that.  And you can provide a written

24  proposal to him writing and see where that goes.  Okay.  But

25  I -- so I -- you know, this is some context here that, you

23

1  know, there's a desire to enforce the agreement understandably

2  but -- now, Mr. Sulaymu-Bey, just so you know, if I were to

3  grant the motion to withdraw and if there was no settlement

4  agreement, okay, you're in a position of having to, you know,

5  litigate the case on a *pro se* basis.  Okay.

6          And as we move into the more complicated portions of

7  the case, things like summary judgment, trial, that comes more

8  difficult.  I'm not saying it's not doable but that becomes or

9  difficult.  And also -- and I won't repeat them -- you carry

10  on and your kids carry on all of the risks of an adverse

11  finding and a potential losing decision of the case.

12          So you filed this position, which I understand --

13  I'm going to give the City some time to tell me what they

14  would like to do and respond.  How much time would you like?

15          MS. MARCOCCIA:  Just like to consult the calendar,

16  Your Honor.

17          THE COURT:  January 10th enough?

18          MS. MARCOCCIA:  That should be find, Your Honor.

19          THE COURT:  Okay.  And then, Mr. Sulaymu-Bey, if

20  you'd like to tell me after reading what they have to say what

21  you would like, to do, I'll let you submit something in

22  writing.  You should consider, you know, what I've said today

23  in terms of -- and all the things I said at the settlement

24  conference, which is those are reasons to settle and, you

25  know, the risks and benefits of settlement that I outline for

1  you and your kids, that's based on my assessment.  And you can

2  value that for whatever it is, but it wasn't based on, you

3  know, just what lawyers are telling me because that's why I

4  have clients here so I can tell them what I think.

5          And if you go down this path, which you may very

6  well be entitled to do, you lose your lawyer, okay, and you

7  lose the benefit of the settlement financially, certainly for

8  your children, because I think that's what you're withdrawing

9  it potentially for you and your spouse, which means nothing

10 happened.  You get nothing at this point and so that's the

11 downside of continuing along this path.

12          Do you have any questions?

13          MR. SULAYMU-BEY:  Yes.  Is the Court going to hear

14 about the liens today or is it going to be deferred or --

15          THE COURT:  So I need some more submissions on that.

16 Okay.  I need a submission from both Mr. Ndanusa under seal,

17 okay, and, Mr. Sulaymu-Bey, anything you'd like to submit

18 about what he submits also submitted under seal.  Okay.  If

19 you don't know how to submit something under seal, okay, you

20 can go to the *pro se* office and can say that I've instructed

21 that that submission be made under seal because it involves

22 attorney/client privilege information.

23          So Mr. Ndanusa, I think as you've offered to submit

24 an affidavit under seal about the reasons for withdrawal and

25 the necessity for a charging lien, I'll give you until -- is

1   January 10th sufficient for that?

2            MR. NDANUSA:  Yes, Your Honor.

3            THE COURT:  Okay.  And then, Mr. Sulaymu-Bey, I will

4   give you until January 31st, okay, both to respond to the --

5   the two things you'd be responding to is one is their

6   opposition -- the City's opposition to your motion to rescind

7   the settlement agreement and the second is a submission under

8   seal.  Anything you'd like to say about what Mr. Ndanusa is

9   saying about the reasons to withdraw as counsel and the liens?

10  Okay.  Yes.

11           MR. NDANUSA:  Can I serve my papers on

12  Mr. Sulaymu-Bey by email?

13           THE COURT:  That's fine.  You have email, correct?

14           MR. NDANUSA:  That's fine, yes.

15           THE COURT:  Okay.

16           MR. SULAYMU-BEY:  One question.

17           THE COURT:  Yes.

18           MR. SULAYMU-BEY:  All right.  So in terms of the

19  assertion of the lien that is in relation to the withdrawal of

20  Mr. Ndanusa, correct?

21           THE COURT:  Well, the way it works is when you move

22  to withdraw as counsel, counsel has to indicate whether

23  they're asserting a lien on any recovery that you might have

24  in the case and that's what that means.

25           The Court doesn't decide, for example, the amount of

1  the lien and whether that's appropriate or not.  It's really a

2  process of in light of the lien, okay, is the withdrawal

3  appropriate or not.  Okay.  We're not -- we don't go back and

4  forth and say, was this work done, was this work not done, et

5  cetera, et cetera.  It's not about the merits of the work.

6  It's really is there a lien or is there not a lien, how much

7  was it, and the Court needs to know that and evaluate it

8  whether withdrawal is appropriate.

9         Now, you've taken the step of saying you don't wish

10  to have him as counsel, right, and if I regret that

11  application, you know, the Court is not making any judgment in

12  that context or in the context of the lien asserted by

13  Mr. Ndanusa whether the lien is appropriate or not, okay.  We

14  don't -- we don't determine the enforceability of the lien in

15  this context.  It's just a means to understand whether the

16  withdrawal itself or the letting go of the lawyer is

17  appropriate or not.  Okay.

18         MR. SULAYMU-BEY:  Could you explain that a little

19  bit more, Your Honor?  I don't think I fully get it.  You're

20  saying that the lien -- when the counsel is either discharged

21  or withdraws, you're saying that the amount of the lien or the

22  enforceability of the lien is not determined at that time or

23  it's --

24         THE COURT:  Yes, that's what I'm saying.  Because

25  basically the attorney has to go and try to enforce the lien

1    at some point.  Okay.  In other words, he's just giving

2    basically notice of the lien at this point.  He's saying, I

3    have a lien and it's going to be in this amount.

4              Now, at some point he may seek to enforce the lien.

5    Now, I don't know off the top of my head whether that would be

6    in this case or in some other proceeding, but the reason -- so

7    it's basically a way for the Court to understand whether

8    there's a lien or not.  It's a yes or no, basically.  And

9    whether it's enforceable, the amount, the good faith services

10   or not, that's not for now.  It may be later in this case.  My

11   sense is I don't know or it may be in a different proceeding,

12   but that's the purpose of the lien question is because

13   sometimes counsels seek to withdraw because they haven't been

14   paid by their client; sometimes counsels seek to withdraw

15   because there are financial issues.  And in that context it's

16   appropriate to understand whether or not their lien is being

17   asserted.  It's a notice requirement to the Court and to you

18   but the Court is not delving into the enforceability, validity

19   or amount of the lien in deciding whether or not to let

20   counsel go.

21             MR. SULAYMU-BEY:  Understood.  And, Your Honor, also

22   we take the position that Mustapha Ndanusa -- we're taking the

23   position that during this time period while in good faith

24   Mr. Ndanusa if during the time period while counsel is working

25   on their responses and their motions, if they have a proposal

1    during that time period, then -- and it's adequately covers,

2    you know, certain amounts that are addressed in our papers and

3    if they're willing to, you know, come within -- within

4    something that was delineated in the Sutherland filing that I

5    mentioned, then -- because I understand the Court, you know,

6    is in favor of these speedy -- you know, if possible, so I'll

7    leave it at that.

8            However, we did -- our position right now is for

9    Mr. Ndanusa be removed as the attorney.

10           THE COURT:  I understand which is why, you know, I

11   will ask them to mail any of their oppositions or submissions

12   to you and, you know, if they wish to settle just with you and

13   your spouse, then can, you know, submit that to you directly.

14           I will say what I said about Sutherland before,

15   which is one of the issues in Sutherland, and I don't remember

16   it off the top of my head, but the amount of time of the

17   separation of the children and how long it lasted and that --

18           MR. SULAYMU-BEY:  That's another -- not to cut you

19   off, Your Honor, that's another thing when I'm speaking about

20   the legal research because what I cited that attorney went

21   into the specifics on the difference between the unlawful

22   period and the lawful period and that attorney dug right --

23   dug in really well and I think that's why there was a more

24   favorable outcome because, you know, it's going to be hard for

25   them -- our daughters to really differentiate as far as their

1  pain and suffering.  So that's the basic idea.

2      MR. KURK:  Your Honor, apologies for interrupting.

3  To the extent that there's concern with respect to Sutherland,

4  I'm happy to speak to Mr. Sulaymu-Bey about that.  The

5  document that he's referencing is a settlement that didn't

6  actually go through.  And as Your Honor knows, it was actually

7  tried and the children were awarded lesses amounts, but I'm

8  happy to discuss what happened in that case to the extent that

9  it might be helpful and understanding the differences in this

10  case and the facts in that case.

11      THE COURT:  Okay.  Mr. Sulaymu-Bey, it's never --

12  there's no downside to hearing out the other side, what their

13  position is on something like this, okay, so there's no harm

14  in a phone call where you can hear them out.  You don't have

15  to agree.  Okay.  You just hear what they have to say.  You

16  can consider it and then you can evaluate it on your own.

17      You can also go downstairs to the City Bar Justice

18  Center and have an attorney, you know -- now, they're not

19  representing you and they're not representing your children.

20  They're just giving general parameters of legal guidance.

21  Okay.  And if you wanted to understand, for example, what the

22  Sutherland case was about, then you bring him a copy and you

23  talk it and say, look, the City lawyers told me this.  Does

24  this square, does this make sense?  If you look at the history

25  of the case they could answer some very basic questions like

30

1   that.

2           If you wanted some impartial kind of sounding board,

3   I'm also willing to do that if you were still open to the

4   global settlement, settling at the amounts for your kids'

5   lawyer if that makes sense.  In other words, I'm happy to

6   explain and hear you out on <u>Sutherland</u> and hear the City out

7   on <u>Sutherland</u> to put that case in a context for you and if you

8   would like me to explain what they're trying to convey to you.

9           Okay.  Now, obviously, as I said at the settlement

10  conference, the decision to settle is yours and yours alone,

11  but I wouldn't have, you know, gone through all the parameters

12  I went through just because I was getting it from the lawyers

13  and I -- you know, I wouldn't have said that to your counsel

14  that I thought it was a settlement worth agreeing to if I

15  didn't believe that.

16          So my recollection accords with what counsel for the

17  City just said, that the case was tried at the end of the day

18  and that the children ended up receiving much less or less

19  than was in the settlement agreement and certainly less than

20  they had sought.

21          MR. SULAYMU-BEY:  Actually, incorrect, Your Honor.

22  They actually wanted to received twice as much as the

23  settlement agreement.  I believe in that case they wanted

24  to -- they objected to the settlement for a particular reason,

25  a different reason.

1          THE COURT:  Well, we can go over it --

2          MR. SULAYMU-BEY:  Yeah.

3          THE COURT:  And the parties can discuss that.  Okay.

4   Do you understand the schedule I've put in place?

5          MR. SULAYMU-BEY:  Right.  For the responses and I

6   understand that.  I do understand that, yes.

7          THE COURT:  Okay.  And does everybody have

8   everyone's contact information here, both for mail and phone

9   number, if they wanted to discuss further?  Okay.  I may --

10  depending on what happens in the submissions then I'll decide

11  whether we need another conference or how to proceed from

12  there.  Okay.  Thank you.

13         ATTORNEYS:  Thank you.

14  (Proceeding concluded at 10:56 a.m.)

15                  * * * * * * * * *

16

17

18

19

20

21

22

23

24

25

32

1          I certify that the foregoing is a court transcript

2    from an electronic sound-recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7          Ruth Ann Hager, C.E.T.**D-641

8    Dated:  December 5, 2019

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25