Civil Action No.   17-cv-3563 (AMD) (SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

S. SHARPE SULAYMU-BEY and ALESHIA M.
SULAYMU-BEY,

                                                            Plaintiffs,

                              -against-

CITY OF NEW YORK, et al.,

                                                            Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION TO RESCIND THE SETTLEMENT AGREEMENT

JAMES E. JOHNSON
Corporation Counsel of the City of New York
Attorney for Defendants Kathy Ann Best,
Nakia Williams, Michaelangelo Medina,
Terry Riley, David Small, and Charles Peifer
100 Church Street
New York, NY  10007

Of Counsel: Rachel Marcoccia
Tel:  (212) 356-2471
Matter No.: 2017-046844

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

POINT I

THE PARTIES AND THE CHILDREN ENTERED
INTO A BINDING AND ENFORCEABLE
SETTLEMENT AGREEMENT ................................................................ 6

(A) There was no express reservation of the
right not to be bound in the absence of a
writing. ........................................................................... 9

(B) There was partial performance of the
settlement contract. ..................................................... 11

(C) All the terms of the contract have been
agreed upon. ................................................................ 12

(D) The settlement agreement at issue is not the
type of complex contract that is usually
committed to writing.................................................... 12

(E) The Court has broad discretion to dispense
with any New York requirement concerning
the infants' component of the settlement
under Local Civil Rule 83.2........................................ 13

(F) The settlement agreement should not be set
aside based on Plaintiffs' change of heart................... 15

POINT II

PLAINTIFFS' COUNSEL HAD BOTH ACTUAL
AND APPARENT AUTHORITY TO ENTER
INTO THE GLOBAL SETTLEMENT OF
PLAINTIFFS' AND THE CHILDREN'S CLAIMS............................... 17

CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                    <u>**Pages**</u>

*Bastedo v. N. Rose-Wolcott Cent. Sch. Dist.*,
　No. 10-cv-6162L, 929 F. Supp. 2dd 223 (W.D.N.Y. 2013) ...................................16

*De Forte v. Liggett & Myers Tobacco Co.*,
　42 Misc.2d 721, 248 N.Y.S.2d 764 (Kings Cty. Sup. Ct. 1964)............................15

*Elliot v. City of New York*,
　No. 11 Civ. 7291 (RWS), 2012 U.S. Dist. LEXIS 126133
　(S.D.N.Y. Sept. 5, 2012) ....................................................................................7, 10

*Lopez v. City of New York*,
　242 F. Supp. 2d 392 (S.D.N.Y. 2003)......................................................10, 11, 12

*Mtgs & Exp'tns Inc. v. Tandy Corp.*,
　490 F.2d 714 (2d Cir. 1974)......................................................................................7

*Omega Eng'g, Inc. v. Omega, S.A.*,
　432 F.3d 437 (2d Cir. 2005)......................................................................................7

*Oparah v. N.Y.C. Dep't of Educ.*,
　No. 12 Civ. 8347 (JGK) (SN), 2015 U.S. Dist. LEXIS 90651
　(S.D.N.Y. Mar. 9, 2015) .............................................................7, 8, 9, 11, 13, 15

*Pereira v. Sonia Holdings (In re Artha Mgmt.)*,
　91 F.3d 326 (2d Cir. 1996)......................................................................................18

*Perone v. Nicklas*,
　99 A.D.2d 484, 470 N.Y.S.2d 656 (2d Dept. 1984) ............................................15

*Pierre v. Chase Inv. Servs.*,
　No. 10 Civ. 1740 (SAS), 2013 U.S. Dist. LEXIS 28515
　(S.D.N.Y. Feb. 25, 2013) ...................................................................................7, 8, 9

*Powell v. Omnicom*,
　497 F.3d 124 (2d Cir. 2007)...................................................................7, 8, 12, 17

*Rivers v. Genesis Holding, LLC*,
　11 Misc. 3d 647, 812 N.Y.S.2d 301 (NY Cty. Sup. Ct. 2006) ..............................14

*Samuel v. Bd. of Educ.*,
　No. 12-cv-4219 (ENV) (LB), 2015 U.S. Dist. LEXIS 137547 (July 23, 2015) ...............10, 11

*Sanchez v. City of New York*,
　40 A.D.3d 276, 834 N.Y.S.2d 186 (1st Dept. 2007)...............................................13

**Cases**                                                                                                        **Pages**

*Southerland v. City of New York*,
   No. 99-cv-3329 (CPS), 2006 U.S. Dist. LEXIS 53582
   (E.D.N.Y. Aug. 2, 2006)................................................................................................14

*Teachers Ins. & Annuity Assoc. v. Tribune Co.*,
   670 F. Supp. 491 (S.D.N.Y. 1987)................................................................................10

*U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*,
   06 Civ. 382 (CM), 2007 U.S. Dist. LEXIS 92192 (S.D.N.Y. Dec. 17, 2007).........................10

*United States v. Int'l Brotherhood of Teamsters*,
   986 F.2d 15 (2d Cir. 1993)............................................................................................18

*Watson v. City of New York*,
   2012 U.S. Dist. LEXIS 171238 (E.D.N.Y. Dec. 3, 2012) ......................................................12

*Watson v. City of New York*,
   No. 11-cv-335 (CBA), 2012 U.S. Dist. LEXIS 172310
   (E.D.N.Y. Oct. 24, 2012)..............................................................................................12

*Willgetodt v. Hohri*,
   953 F. Supp. 557 (S.D.N.Y. 1997)................................................................................7, 15

*Winston v. Mediafare Entertainment Corp.*,
   777 F.2d 78 (2d Cir. 1985)....................................................................................8, 9, 11, 12, 13

**Statutes and Rules**

42 U.S.C. § 1983...........................................................................................................1, 2

CPLR 1206....................................................................................................................12

CPLR 1208.............................................................................................................2, 12, 15

CPLR 2104.....................................................................................................................8

Local Civil Rule 83.2..................................................................................................2, 14

New York Family Court Act § 1024.................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs S. Sharpe Sulaymu-Bey and Aleshia Sulaymu-Bey (the "Plaintiffs") brought this action pursuant to 42 U.S.C. § 1983 alleging that their rights – and the rights of their minor four children N.S.B., N.A.S.B., M.S.S.B., and A.S.S.B. (the "Children") – were violated in connection with an emergency removal of the Children on April 25, 2014 by the New York City Administration for Children's Services ("ACS") with assistance from the New York City Police Department ("NYPD"). After a decision granting in part Defendants' motion for judgment on the pleadings and the conclusion of discovery, the parties reached an agreement to settle Plaintiffs' and Children's claims arising from the events alleged in this action that was made on the record during a settlement conference held before Magistrate Judge Bulsara on October 11, 2019.

Following the settlement agreement, a disagreement arose between Plaintiffs and their counsel, Mr. Mustapha Ndanusa. At the same time, however, Plaintiffs represented to the Court by letter dated October 21, 2019 that Plaintiffs "do not plan to overturn the settlement." *See* Dkt No. 63 at p. 3. Nearly two months after the settlement agreement was made, on December 4, 2019, Plaintiffs filed a motion seeking to rescind the Children's settlement agreement. At a December 5, 2019 conference, Plaintiff S. Sharpe Sulaymu-Bey stated on the record that "the two Plaintiffs in the case would be willing to move forward to the extent that agreement was formed." *See* Exhibit 1 to the Declaration of Rachel Marcoccia ("Marcoccia Declaration") at 10.

Here, there is no basis to rescind any part of the deliberate bargain struck in open court during a lengthy settlement conference on October 11, 2019 while Plaintiffs' were represented by counsel. As explained herein, the parties entered into a binding and enforceable settlement agreement under both federal common law and New York law.

Furthermore, all of the elements necessary for enforcement have been established. Both sides mutually assented on the record to the oral settlement agreement, and there is no basis in the record to conclude that that the parties did not intend to be bound to this settlement unless or until the agreement was memorialized in writing. In addition, the parties' straightforward settlement constitutes agreement on all points that required negotiation—namely, the amount of money that the Plaintiffs would receive in exchange for the dismissal of their claims and the money that the Children would receive in settlement of their respective claims. Also, given that the agreement was made by represented parties on the record, compliance with New York CPLR 1208 is merely ministerial. Thus, Plaintiffs should be directed to comply with CPLR 1208. Plaintiffs who stated that they did not wish to "overturn" the settlement as recently as October 21, 2019 should not be permitted to rescind the clear agreement between the parties based on a change of heart. Moreover, in this vein, pursuant to Local Civil Rule 83.2, the Court has broad discretion in regard to the settlement of infants' claims and "may dispense with any New York requirement" and conform the proceeding to approve the children's component of the settlement as closely as possible with New York statutes and rules.

Accordingly, Defendants now submit this memorandum of law in opposition to Plaintiffs' motion to rescind the children's component of the settlement agreement and in support of Defendants' motion to enforce the entirety of the settlement agreement on the grounds that the parties reached a binding, enforceable settlement agreement on the record at the October 11, 2019 settlement conference and Plaintiffs' counsel had both actual and apparent authority to settle the case on behalf of Plaintiffs and the Children.

## STATEMENT OF FACTS

The Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 alleging that their rights – and the rights of their four minor children – were violated under the First, Fourth, Fifth,

Ninth, Thirteenth, and Fourteenth Amendments, along with their rights under New York and international law.  Underpinning Plaintiffs' and the Children's claims is the emergency removal of the Children on April 25, 2014 by ACS with assistance from NYPD. The removal was undertaken pursuant to Section 1024 of the New York Family Court Act in response to a report filed with the Statewide Central Register of Child Abuse and Maltreatment (the "SCR") alleging, *inter-alia*, that Plaintiff Aleshia Sulaymu-Bey failed to address the medical needs of N.S.B. resulting in N.S.B. being diagnosed with failure to thrive (the "SCR Report").

The parties filed cross-motions for judgment on the pleadings and, on March 29, 2019, the Court denied Plaintiffs' motion and granted Defendants' motion in part. The Court dismissed all claims that the Plaintiff parents purported to bring on behalf of their Children as Plaintiffs were proceeding *pro se* at that juncture of the case. *See* Dkt. 52 at 13 n13. The Court also dismissed certain other claims against some of the Defendants. However, the Court found that the Plaintiff parents could proceed with three claims against the following six City employees: ACS employees Kathy Ann Best and Nakia Williams and NYPD employees PO Michaelangelo Medina, PO Terry Riley, Detective David Small, and Sergeant Charles Peifer:

1. A violation of their 14th Amendment procedural due process rights with respect to ACS's removal of the Children without prior court authorization or parental consent;
2. A violation of their 4th Amendment right due to a lack of probable cause to justify Defendants' entry and search of Plaintiffs' house without prior court authorization; and
3. A retaliation claim in violation of their 1st Amendment rights; Plaintiffs alleged that ACS's decision to remove their Children was connected to their protected expression of their religious beliefs.

On August 1, 2019, Mr. Mustapha Ndanusa appeared in the case as counsel for Plaintiffs. Following discovery, the parties' counsel engaged in settlement discussions and Plaintiffs' counsel presented to Defendants the Plaintiffs' "global" settlement demand that included demands to settle the Plaintiffs' claims and the Children's claims arising from the events alleged in the above-captioned action in anticipation of a new separate action involving

3

the minor children.  *See* Declaration of Rachel Marcoccia executed on January 10, 2020 (the "Marcoccia Declaration"), ¶ 2. The parties' continued settlement discussions and on October 11, 2019, the parties reached a settlement agreement of Plaintiffs claims as well as the claims of the Children on the record at a settlement conference before Magistrate Judge Bulsara. The Court recited on the record the agreed upon settlement payment for each Plaintiff and each of the Children, and Defendants' counsel stated on the record that the agreed upon settlement monies were inclusive of attorney's fees. *See* Marcoccia Declaration, ¶ 3. The minute entry on the Court's docket following the conference reflected that "A settlement was reached."

Following the settlement, a disagreement arose between the Plaintiffs and their counsel. On October 21, 2019, Plaintiffs' counsel, Mr. Ndanusa, wrote to the Court that Plaintiffs discharged him as counsel and in an effort "to avoid motion practice" requested that a conference be held "to discuss how to proceed with the completion of the settlement process."  Dkt. 62. In Plaintiffs' counsel's October 21, 2019 letter, Plaintiffs' counsel confirmed, among other things, that "[o]n October 11, 2019 all parties appeared for a settlement conference, after which the parties reach[ed] a global settlement, inclusive of fees, that settled the claims of Plaintiffs and the Plaintiffs' four minor children. The settlement was placed on the record at the conclusion of the settlement conference." Dkt. 62.

On October 21, 2019, Plaintiffs also filed their own letter in which Plaintiffs stated that they had discharged their counsel but also represented to the Court that Plaintiffs "do not plan to overturn the settlement." *See* Dkt No. 63 at 3. Plaintiffs also stated in their letter of October 21, 2019 that "any motion to enforce settlement as asserted by Defense Counsel, would most likely be unnecessary according to the law of agency, lawyers Professional responsibility, inter alia, nor does settlement turn on the illegal participation of former attorney Mr. Ndanusa."

4

Defendants opposed Plaintiffs' counsel's application to be relieved as counsel at this very last stage of the case after the parties and the Children had entered into a settlement agreement. *See* Dkt. 69-70. On October 23, 2019, the Court scheduled a status conference for December 5, 2019 to address Plaintiffs' counsel's application to be relieved as counsel. On November 14, 2019, Plaintiffs' counsel filed a formal application to be relieved as Plaintiffs' counsel by order to show cause. *See* Dkt. 65. Mr. Ndanusa's Affidavit in Support of the Order to Show Cause reiterated that "[o]n October 11, 2019, the parties appeared before your honor for a settlement conference. A[t] said conference, the parties reached a global settlement that include[d] the Sulaymu-Bey's minor children." Dkt. 65-1.

One day prior to the scheduled Court conference, on December 4, 2019, Plaintiffs filed a motion with the Court's *pro se* office in which Plaintiffs seek to rescind the Children's component of the oral settlement agreement. *See* Dkt. 73; *see also* Exhibit 1 to the Marcoccia Declaration at 9-10. At the December 5, 2019 conference, Plaintiff S. Sharpe Sulaymu-Bey stated on the record that "the two Plaintiffs in the case would be willing to move forward to the extent that agreement was formed." *See* Exhibit 1 to the Marcoccia Declaration at 10.

On December 5, 2019, Defendants' counsel requested the transcripts of the October 11, 2019 settlement conference and the December 5, 2019 conference, which Defendants received on December 6, 2019. Shortly thereafter, on December 6, 2019, the Court issued the following directive on the ECF system (the "December 6th Directive"):

> ORDER: Defendants have requested and received inadvertently a transcript of that portion of the settlement hearing proceedings that were conducted on the record, namely the terms of the settlement. Requesting a transcript results in such colloquy being made part of the public record. The settlement proceedings are confidential and are not to be part of the public record. In addition, the proceedings on the record were made for the Court's benefit and are to remain under seal as part and parcel of a confidential settlement proceeding. Defendants must return or destroy any copy of the transcript from the proceeding that they have received and provide

5

an affirmation of the same. To the extent that either party believes the on the record component of the settlement conference is material to any of the pending motions they may request in their briefs that the Court review those proceedings in camera. So Ordered by Magistrate Judge Sanket J. Bulsara on 12/6/2019. (Guo, Alicia) (Entered: 12/06/2019)"

Defendants complied with the Court's December 6th Directive. *See* Dkt. 76. Accordingly, Defendants do not currently have a copy of the transcript of the settlement conference proceedings held on the record during which the oral settlement agreement was made.

## ARGUMENT

### POINT I

#### THE PARTIES AND THE CHILDREN ENTERED INTO A BINDING AND ENFORCEABLE SETTLEMENT AGREEMENT

On October 11, 2019, a global settlement was reached which settled the claims of the Plaintiffs and the Children arising out of the events alleged in this action. The settlement was recited on the record in open court and both sides were represented by counsel and had an opportunity to be heard. All parties assented to the terms of the agreement. Given the Court's December 6th Directive, the Defendants do not cite in this memorandum the specific settlement payment amounts agreed upon but respectfully submit that the transcript of the portion of the proceedings held on the record in open court is relevant and material as it reflects the bargain that was struck. Therefore, Defendants respectfully request that the Court review the audio and/or transcript of the on the record proceedings during which the settlement agreement was made. Further, Defendants request that the October 11, 2019 transcript be made available to them even if the Court does not wish the transcript to be available on the public docket.

"'A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.'" *Oparah v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 8347 (JGK) (SN), 2015 U.S. Dist. LEXIS 90651, at *6 (S.D.N.Y. Mar. 9, 2015) (quoting *Mtgs & Exp'tns Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)). "Indeed, '[s]uch power is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings.'" *Oparah,* 2015 U.S. Dist. LEXIS 90651 at *7 (quoting *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437, 444 (2d Cir. 2005). "A settlement agreement stated on the record is one of the strongest and most binding agreements in the field of the law and is thus entitled to substantial deference." *Pierre v. Chase Inv. Servs.*, No. 10 Civ. 1740 (SAS), 2013 U.S. Dist. LEXIS 28515, *10 (S.D.N.Y. Feb. 25, 2013). "[A]nnouncing the terms of an agreement on the record in open court" serves a number of functions including a "'cautionary function' whereby the parties' acceptance is considered and deliberate." *Powell v. Omnicom*, 497 F.3d 124, 131 (2d Cir. 2007).

"Once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, 'even if a party has a change of heart' between the time of the agreement . . . and the time it is reduced to writing.' " *Oparah*, 2015 U.S. Dist. LEXIS 90651, at *6 (quoting *Elliot v. City of New York,* No. 11 Civ. 7291 (RWS), 2012 U.S. Dist. LEXIS 126133, at *3 (S.D.N.Y. Sept. 5, 2012)). "Afterthought or change of mind are not sufficient to justify rejecting a settlement." *Willgetodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997).  "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." *Powell*, 497 F.3d at 128.

Furthermore, the Second Circuit Court of Appeals has found that federal law and New York law are "materially indistinguishable" with regard to the enforceability of oral

settlement agreements and has applied New York and federal common law "interchangeably." *Powell*, 497 F.3d at 129 n1. Under both federal common law and New York law, "[i]t is well settled that verbal, in-court settlement agreements can be binding and enforceable even if never reduced to a writing." *Pierre v. Chase Inv. Servs.*, No. 10 Civ. 1740 (SAS), 2013 U.S. Dist. LEXIS 28515, *9 (S.D.N.Y. Feb. 25, 2013); *see also* New York CPLR 2104 (providing that an oral settlement on the record in open court serves as an exception to the Statute of Frauds). The "absence of a fully executed settlement agreement need not be fatal to enforcement, even if one were originally contemplated by the parties." *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 78 (2d Cir. 1985)). "While a written document is the most traditional evidence of mutual assent, parties may enter and be bound by an agreement without signing a fully executed contract." *Oparah*, 2015 U.S. Dist. LEXIS 90651 at *8. "Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation. *Powell,* 497 F.3d at 129. "Consequently, a 'voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed." *Id.*

"When there is no final document on which to rely, the controlling factor in determining whether parties are bound by an agreement is whether a court has evidence of the parties' intent to be bound." *Oparah*, 2015 U.S. Dist. LEXIS 90651 at *8-9. The Second Circuit has adopted a four-factor test to evaluate disputes around parties' settlement intentions in the absence of a formalized writing.  *See Oparah*, 2015 U.S. Dist. LEXIS 90651 at *10. Although no single factor is decisive, the factors are: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."

*Powell*, 497 F.3d at 129 (citing *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).

As explained below, analysis of the *Winston* factors favors enforcement of the settlement agreement.

**(A)   There was no express reservation of the right not to be bound in the absence of a writing.**

The first *Winston* factor favors enforcement of the settlement agreement because Plaintiffs made no express reservation of the right not to be bound until the parties signed a written agreement memorializing the oral agreement. *Oparah,* 2015 U.S. Dist. LEXIS 90651 at *10 ("[t]here is no evidence of an express reservation of the right not to be bound until the parties signed a document memorializing their verbal settlement agreement"). Here, both sides were represented by counsel and had an opportunity to be heard and neither side expressed on the record at the October 11, 2019 settlement conference a reservation of a right not to be bound in the absence of an executed agreement.

In addition, within ten days after the settlement agreement that was made on the record, at the time that Plaintiffs communicated that they discharged their counsel, Plaintiffs represented to the Court by letter that they did not plan to "overturn the settlement" and that a motion to enforce the settlement "would most likely be unnecessary according to the law of agency, lawyers Professional responsibility, inter alia …" *See* Dkt. 63. These separate representations made after the settlement was entered into further confirm that Plaintiffs understood that they and the Children were bound by the oral agreement and that the settlement's reduction to writing was only a formality.

Moreover, when parties contemplate that their settlement would be memorialized in writing, "that alone does not indicate that they agreed, either explicitly or implicitly, not to be bound until a written agreement was executed." *Pierre v. Chase Inv. Servs.*, No. 10 Civ. 1740

9

(SAS), 2013 U.S. Dist. LEXIS 28515, *13 (S.D.N.Y.). "Even if the parties agreed to the settlement in open court with the intent to draft and sign a written settlement agreement and general release, this does not satisfy the express reservation requirement" to find that an oral agreement is not enforceable. *Lopez v. City of New York*, 242 F. Supp. 2d 392, 393 (S.D.N.Y. 2003); *see also Elliott v. City of New York*, No. 11 Civ. 7291, 2012 U.S. Dist. LEXIS 126133, 8 (S.D.N.Y. Aug. 31, 2012) (explaining that the parties agreement to "FILE THE APPROPRIATE PAPERS" in furtherance of the parties' settlement did not establish that a written contract was a prerequisite to a binding agreement"); *Samuel v. Bd. of Educ.*, No. 12-cv-4219 (ENV) (LB), 2015 U.S. Dist. LEXIS 137547, *11 (July 23, 2015) ("Even though the parties still had to process paperwork, and the Court planned to hold subsequent conferences to oversee the progress of the settlement, plaintiff never reserved any right [to opt out of the oral settlement agreement] on the record, and the Court made it abundantly clear that the settlement agreement was final and binding").

Accordingly, Defendants' intention to obtain a standard release that reflects the termination of the lawsuit and discharge of Plaintiffs' and the Children's claims in consideration of Defendants' payment of the agreed upon settlement monies does not negate the parties' intentions to be bound to the settlement agreement made on the record. It is clear that "where a party has entered into an agreement to settle, 'the party cannot avoid the settlement by refusing to sign the papers that would memorialize the terms of the agreement that were reported to the court." *U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*, 06 Civ. 382 (CM) (LMS), 2007 U.S. Dist. LEXIS 92192 (S.D.N.Y. Dec. 17, 2007) (Report and Recommendation adopted by *U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*, No. 06-Civ.382 (CM) (LMS), 2007 U.S. Dist. LEXIS 92192 (S.D.N.Y. Nov. 15, 2007); *Teachers Ins. & Annuity Assoc. v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987) (explaining that the idea that one party can "kill" a deal by refusing to sign

10

contract documents "would render language like 'binding agreement' and 'firm commitment' meaningless").

In addition, immediately after the settlement conference, the Court entered a minute entry on the docket memorializing that the parties had reached an agreement by recording that "A settlement was reached." *Samuel,* 2015 U.S. Dist. LEXIS 137547 at *12 (With regard to the first *Winston* factor, "[t]he icing on the cake, of course, is that immediately after the settlement conference Judge Bloom entered a written order memorializing the fact that the parties had reached an agreement and that the case was settled").

As there was no agreement not to be bound unless and until the oral settlement agreement was reduced to writing, the settlement agreement should be enforced.

**(B)     There was partial performance of the settlement contract.**

As to the second *Winston* factor, there was partial performance of the settlement contract insofar as the parties ceased litigating the case following the settlement conference. *Lopez,* 242 F. Supp. 2d at 393-394. Indeed, between reaching the settlement agreement on the record during the settlement conference on October 11, 2019 and Plaintiffs' filing their motion to rescind the oral agreement on December 4, 2019, the parties' actions suggested that both sides understood that settlement had been reached. *Oparah,* 2015 U.S. Dist. LEXIS 90651 at *12. Defendants have not filed a motion for summary judgment, which was planned if the parties had not reached a settlement agreement. Also, Plaintiffs' counsel reiterated in multiple filings with the Court following the settlement, that the parties reached a "global settlement" that included the Children's claims. Although "courts within this circuit have found that [ceasing active litigation of a matter] does not weigh for or against settlement," Defendants have acted in good faith and performed under the terms of the agreement as best they could, by moving to enforce

the settlement, and by behaving as if the case has been settled.  *Lopez,* 242 F. Supp. 2d at 393-394 (enforcing settlement and dismissing action).

    **(C)**    **All the terms of the contract have been agreed upon.**

        The Second Circuit has characterized this third *Winston* factor as "whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to." *Powell*, 497 F.3d 124. Here, Plaintiffs have not identified any material terms that were excluded from the agreement. Plaintiffs assert that "how and where would the possible proceeds be held, any stipulated uses for specified purposes" remains to be negotiated; however, the Court need only order the disposition of the children's proceeds in accordance with New York CPLR 1206.

        Furthermore, no negotiation of the infant compromise paperwork prescribed by New York CPLR 1208 is necessary. In this regard, CPLR 1208 sets forth affidavits to be provided by an infant's representative and the infant's counsel, if so represented.  Defendants have no role or obligation with regard to that documentation, and therefore the parties' oral settlement constitutes agreement on all points that required negotiation—namely, the amount of money that would be given to Plaintiffs and each of the Children in exchange for their agreement to terminate the lawsuit and settle their claims against Defendants.

        Accordingly, the third *Winston* factor favors enforcement of the settlement agreement.

    **(D)**    **The settlement agreement at issue is not the type of complex contract that is usually committed to writing.**

        The "Second Circuit has held that 'agreements of the sort committed to writing are generally ones that involve complex terms or have long-term effects." *Watson v. City of New York*, No. 11-cv-335 (CBA), 2012 U.S. Dist. LEXIS 172310, *10 (E.D.N.Y. Oct. 24, 2012) (Report and Recommendation adopted by *Watson v. City of New York*, 2012 U.S. Dist. LEXIS

171238 (E.D.N.Y. Dec. 3, 2012). Courts have held that the City of New York's standard settlement agreement is not the type of complex agreement that is usually committed to writing. *Oparah*, 2015 U.S. Dist. LEXIS 90651 at *15 ("The agreement here does not approach the length or complexity of those frequently considered to require a writing . . . There was no discussion of a payment plan and the proposed memorialization of the terms is a short, standard settlement agreement from the New York City Law Department . . . Thus, although most settlement agreements in this Court are written, there is nothing complicated about this agreement that would require strict adherence to that tradition.").

The agreement here is quite straightforward as it involves only a one-time payment to each Plaintiff and each of the Children and no complex terms. *See Watson v. City of New York,* No. 11-CV-335 (CBA) (CLP), 2012 U.S. Dist. LEXIS 172310, at *10 (E.D.N.Y. Oct. 24, 2012) ("In [Plaintiff's] case, the agreement was quite straightforward; plaintiff would receive $13,500 in resolution of all her claims against the City.   There were no complexities or contingencies that needed to be reduced to writing; it was 'a simple exchange of [a release] for termination of the lawsuit, and had no far-reaching effects.'")

Accordingly, the fourth and final *Winston* factor favors enforcement of the settlement.

**(E)    The Court has broad discretion to dispense with any New York requirement concerning the infants' component of the settlement under Local Civil Rule 83.2.**

The Children's component of the settlement reached on the record at the settlement conference should not be set aside because the infant compromise order has yet to be signed by the Court. *See Sanchez v. City of New York*, 40 A.D.3d 276, 277, 834 N.Y.S.2d 186, 187 (1st Dept. 2007) (concluding that "vacatur of the settlement reached in open court was properly denied even though the infant compromise order had yet to be signed"). Plaintiffs' reliance on *Southerland v. City of New York*, No. 99-cv-3329 (CPS), 2006 U.S. Dist. LEXIS

53582 (E.D.N.Y. Aug. 2, 2006) and *Rivers v. Genesis Holding, LLC*, 11 Misc. 3d 647, 812 N.Y.S.2d 301 (NY Cty. Sup. Ct. 2006) to suggest that the Children's component of the settlement should be set aside is misplaced. *Southerland* is inapposite as, among other things, two of the infant children reached the age of 18 before the settlement was approved and those adult parties objected to the settlement. *Rivers* is also distinguishable because the parties' attorneys agreed in that case that a settlement agreement was subject to the approval of a surrogate and also because the Children's claims here--unlike in *Rivers*--cannot be restored to the Court's active calendar and such claims would need to be brought by a separate action. *See* Dkt. 52.

Moreover, Local Civil Rule 83.2 gives this Court broad discretion to approve the settlement of the Children's claims in a manner that conforms as closely as possible with applicable New York statutes and rules; however, the Court "for cause shown, may dispense with any New York State requirement." Rule 83.2 specifically provides as follows:

> (a) Settlement of Actions by or on Behalf of Infants or Incompetents.
> (1) An action by or on behalf of an infant or incompetent shall not be settled or compromised, or voluntarily discontinued, dismissed or terminated, without leave of the Court embodied in an order, judgment or decree. ***The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the Court, for cause shown, may dispense with any New York State requirement.***
> (2) The Court shall authorize payment to counsel for the infant or incompetent of a reasonable attorney's fee and proper disbursements from the amount recovered in such an action, whether realized by settlement, execution or otherwise and shall determine the said fee and disbursements, after due inquiry as to all charges against the fund.[1]

---

[1] Mr. Ndanusa has stated that he is seeking a lien for attorney's fees "only as against the parents, not as against the children." Exhibit 1 to Marcoccia Declaration at 14.

(3) The Court shall order the balance of the proceeds of the recovery or settlement to be distributed as it deems may best protect the interest of the infant or incompetent.

(Emphasis added).

Here, given that Plaintiffs, who were represented by counsel, agreed to the settlement in open court, "compliance with CPLR 1208 [is] merely a ministerial matter." *Perone v. Nicklas*, 99 A.D.2d 484, 470 N.Y.S.2d 656 (2d Dept. 1984). Accordingly, the Court may direct Plaintiffs and the Children's counsel to prepare the papers to comply with New York CPLR 1208 and submit such papers to the Court. *See Perone,* 99 A.D.2d 484, 470 N.Y.S.2d 656 (directing guardian and infant's attorney to prepare papers to comply with CPLR 1208 given the effectiveness of the parties' stipulation of settlement).

**(F)      The settlement agreement should not be set aside based on Plaintiffs' change of heart.**

A court "may only relieve a party of the consequences of a settlement agreement only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident…" *Willgerodt,* 953 F. Supp. at 560. Here, it was not until nearly two months after the settlement conference that Plaintiffs raised any issue with regard to the Children's component of the settlement and Plaintiffs' belated claim of "inadequate representation"[2] of the minor children and Plaintiffs' refusal to proceed with respect to Children's component of the settlement agreement at this juncture can only be viewed as a change of heart, "which is firmly disfavored as a ground for reformation or rescission of a binding agreement." *Oparah*, 2015 U.S. Dist. LEXIS 90651 at *20; *see also De Forte v. Liggett & Myers Tobacco Co*., 42 Misc.2d 721, 722-723, 248 N.Y.S.2d 764, 766 (Kings Cty. Sup. Ct. 1964) (concluding that parent's refusal to cooperate with settlement was "unreasonable, arbitrary and capricious" and explaining that the

---

[2] *See* Dkt. 73 at 3.

"rights of an infant cannot and should not be lost through…obdurate, unreasonable and uninformed conduct"). Indeed, Plaintiffs have stated that when they asked their counsel for the meaning of a global demand, their counsel "told me that it would include a figures [sic] for settling daughters claims." Dkt. 71-1, ¶ 17.

Plaintiffs have not offered any plausible evidence of fraud, collusion, mistake, or accident that would warrant setting the agreement aside. The so called "misrepresentation" identified by Plaintiffs is "that the final sum was all that could be obtained in this case, implying that was all that the…Comptroller of the City of New York could tender, and not being able to meet Demand." *See* Dkt. 73 at 3. As Judge Bulsara recounted at the December 5, 2019 conference, Defendants made no such representation.

> They haven't made a representation directly to you. Okay. And I've made various representations to you about what I thought was possible in the settlement and what was not possible in the settlement. Okay. And that's in the context of a settlement. Lots of other cases settle for other amounts – are litigated to other amounts. Every case is different. Every case has risks, every case has benefit as I explained to you and your counsel at the settlement conference.

Exhibit 1 to Marcoccia Declaration at 13.

Plaintiffs' reliance on *Bastedo v. N. Rose-Wolcott Cent. Sch. Dist.*, No. 10-cv-6162L, 929 F. Supp. 2dd 223 (W.D.N.Y. 2013) to suggest that Plaintiffs may rescind the settlement agreement is also misplaced. That case involved an allegation by a *pro se* plaintiff that she would not have settled had she known that defendant had liability insurance. Here, both sides were represented by counsel, insurance coverage was not an issue, and parties were simply making their assessments and conclusions about the value of the claims based on discovery and the exchange of information leading up to and occurring at the settlement conference.

The fact that cases settle for different amounts is also not a basis to rescind the oral settlement agreement. Here, there was an arm's length negotiation and relevant facts and

case law pertaining not only to Plaintiffs' claims but also to the Children's claims were considered and discussed by the parties in advance of the settlement conference and also made available to the Court in advance of the conference pursuant to Judge Bulsara's Settlement Conference Procedures. The Court also recounted that at the settlement conference "[t]here were particular discussions about your children and how much they would receive." Exhibit 1 to Marcoccia Declaration at 12.

Furthermore, "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." *Powell*, 497 F.3d at 128.

At the December 5, 2019 hearing Judge Bulsara also stated:

"Look, you know, there was a clear oral agreement there, in my view…the fact that there are other cases that settle for different amounts is not a basis to withdraw. It's not also a basis to conclude anything you were told was false or incorrect."

Exhibit 1 to Marcoccia Declaration at 14.

Accordingly, the settlement agreement reached on the record at the October 11, 2019 settlement conference should be enforced.

## POINT II

### PLAINTIFFS' COUNSEL HAD BOTH ACTUAL AND APPARENT AUTHORITY TO ENTER INTO THE GLOBAL SETTLEMENT OF PLAINTIFFS' AND THE CHILDREN'S CLAIMS

The settlement agreement must be enforced as a binding and enforceable contract because Mr. Ndanusa had both actual and apparent authority to settle Plaintiffs' and their minor children's claims. As Judge Bulsara explained to Plaintiffs at the December 5, 2019 conference:

your counsel was clearly representing not only you and your spouse, but also your children. And it was a global negotiation. It was a global settlement conference and it was placed on the record.

> There were particular discussions about your children and how
> much they would receive. And it's you know, an oral contract, an
> oral agreement.

Exhibit 1 to Marcoccia Declaration at 11-12.

The Second Circuit has made clear that, "'if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld.'" *United States v. Int'l Brotherhood of Teamsters*, 986 F.2d 15, 19 (2d Cir. 1993). "The lawyer-client relation being one of agent-principal, actual authority may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act." *Id.* at 20 (internal quotation marks and citations omitted). "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Id.* (internal quotation marks and citations omitted). "It is the law in this circuit, as well as generally, that customarily only the representation of the principal to the third party can create apparent authority, not the representation of the agent alone." *Id.* (internal quotation marks and citations omitted).

"Nevertheless, because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, [the Second Circuit] presume[s] that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *Pereira v. Sonia Holdings (In re Artha Mgmt.)*, 91 F.3d 326, 329 (2d Cir. 1996). "In accordance with that presumption, any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority." *Id.* (citations omitted). "The burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial." *Int'l Brotherhood of Teamsters,* 986 F.2d at 20.

18

Here, Plaintiffs' counsel, Mr. Ndanusa, demonstrated actual and apparent authority to settle this matter on behalf of Plaintiffs and the minor children throughout the settlement negotiations.  In anticipation of a new separate action involving the minor children, on September 26, 2019, Plaintiffs' counsel emailed Defendants' counsel to present the parents' "global" settlement demand, which relayed Plaintiffs' demands with regard to Plaintiffs' and the Children's claims, which Plaintiffs, through their counsel, had indicated they anticipated bringing anew in a separate action.  On September 27, 2019, Plaintiffs' counsel followed up by letter regarding the demands. Further, Mr. Ndanusa's conduct at the October 11, 2019 settlement conference communicated Mr. Ndanusa's actual and apparent authority to everyone present, as Mr. Ndanusa advocated on Plaintiffs' and the Children's behalves and conferred with both Plaintiffs, who sat in the courtroom and participated in the settlement proceedings.  Also, in Mr. Ndanusa's October 21, 2019 letter to the Court, he stated that he learned on October 18, 2019 that his "office *no longer* represents Plaintiffs *and their children*" confirming both Mr. Ndanusa's belief and Defendants' understanding that he had been representing both Plaintiffs and their Children. Dkt. 62 (Emphasis added). Accordingly, because Mr. Ndanusa had both actual and apparent authority to settle this matter on behalf of Plaintiffs and the Children, and because Plaintiffs have not met their burden of proving that Mr. Ndanusa entered into the settlement agreement without authority, the settlement should be enforced.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion to rescind the oral settlement agreement and grant Defendants' motion to enforce the settlement, dismiss this case with prejudice, and grant Defendants such other and further relief as the Court deems appropriate.


Dated:        New York, New York
              January 10, 2020


                              JAMES E. JOHNSON
                              Corporation Counsel of the
                              City of New York
                              Attorney for Defendants Kathy Ann Best, Nakia
                              Williams, Michaelangelo Medina, Terry Riley,
                              David Small, and Charles Peifer
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2471


                        By:   /s/ Rachel Marcoccia
                              Rachel Marcoccia
                              *Assistant Corporation Counsel*